Argued and submitted September 7, 1979,
remanded for resentencing January 22,
petition for rehearing denied February 26, 1980

## STATE OF OREGON,
*Respondent,*

*v.*

## KONRAD NEAL GARCIA,
*Petitioner.*

(TC C 78-01-00208, CA 11307, SC 26150)

605 P2d 671

Thomas J. Crabtree, Deputy Public Defender, Salem, argued the cause for petitioner. With him on the brief were Gary D. Babcock, Public Defender, and Patricia Burnett, Law Clerk, Salem.

Thomas H. Denney, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were James A. Redden, Attorney General, and Walter L. Barrie, Solicitor General, Salem.

LENT, J.

TONGUE, J., concurred in part, dissented in part and filed opinion in which HOWELL, J., joined and PETERSON, J., joined in part.

PETERSON, J., concurred in part and dissented in part and filed opinion.

**LENT, J.**

The defendant was charged with rape in the first degree, ORS 163.375; kidnapping in the first degree, ORS 163.235; and three counts of sodomy in the first degree, ORS 163.405. All of the charges arose out of conduct involving the same victim in Portland, Oregon on January 8, 1978. A jury found the defendant guilty on all five counts. The trial court sentenced the defendant to maximums of 20 years on the rape charge, 20 years on the kidnapping charge, and 20 years on each sodomy charge, each sentence to run consecutively, for a total term not to exceed 100 years.

The defendant appealed to the Court of Appeals, which affirmed the conviction from the bench, 37 Or App 675, 588 P2d 687 (1978). This court allowed review, ORS 2.520; 287 Or 129, 592 P2d 1021 (1979).

The defendant raises three principal arguments on review. He contends that a separate conviction and sentence for kidnapping is contrary to the legislative intent of ORS 163.235; that the several sexual offenses should be treated as a single criminal episode and therefore should not be punished separately; and that if the separate sexual offenses are punished separately, the sentences should be held excessive under substantive sentence review, ORS 138.040.

At about 8:30 p.m. on January 8, 1978, the defendant, walking on a street in Portland, grabbed the victim, a female who was walking alone. He put his hand over her mouth and a knife at her throat and told her not to say anything. He forced her to cross the street and walk two blocks and then across another street. He then took her behind a house and forcibly raped and sodomized her. These events consumed about forty minutes.

I

The defendant argues that a separate conviction and sentence for kidnapping is improper. The answer

[415]

to this contention is found in the relevant kidnapping statutes.

The 1971 legislature adopted the present kidnapping statutes[1] as part of the complete revision of the Oregon Criminal Code. The 1967 legislature created the Oregon Criminal Law Revision Commission to revise the criminal laws of this state. Carefully kept records of the proceedings of the Commission and of its subcommittees were preserved and, accordingly, provide a rich source for determination of the drafters' intent. The Commission's first draft of the kidnapping sections was adopted from the Model Penal Code[2] and contained the following commentary:

[1] ORS.163.215 provides in part:

"As used in ORS 163.215 to 163.257, unless the context requires otherwise:

"(1) 'Without consent' means that the taking or confinement is accomplished by force, threat or deception, * * *.

"* * * * *."

ORS 163.225(1):

"A person commits the crime of kidnapping in the second degree if, with intent to interfere substantially with another's personal liberty, and without consent or legal authority, he:

"(a) Takes the person from one place to another; or

"(b) Secretly confines the person in a place where he is not likely to be found."

ORS 163.235:

"(1) A person commits the crime of kidnapping in the first degree if he violates ORS 163.225 with any of the following purposes:

"(a) To compel any person to pay or deliver money or property as ransom; or

"(b) To hold the victim as a shield or hostage; or

"(c) To cause physical injury to the victim;* or

"(d) To terrorize the victim or another person.

"(2) Kidnapping in the first degree is a Class A felony."

---

*The indictment charged this purpose.

[2] Model Penal Code, Section 212.1, Tent. Draft No. 11 (1960); Criminal Law Revision Commission, Commentary, Kidnapping and Related Offenses, Preliminary Draft No. 1, Oct. 1968, p 9.

"Current kidnaping statutes apply to abductions which are incidental to or an integral part of the commission of an independent crime such as robbery or rape where the victim is removed and confined for a given period to effectuate the criminal purpose. Where the detention period is brief there is no genuine kidnaping. However, cases of this nature are sometimes prosecuted as kidnaping in order to secure the death penalty or life imprisonment for behavior that amounts in substance to rape or robbery in jurisdictions where these offenses are not subject to such penalties. *People v. Chessman,* 238 P2d 1001 (1951). The Model Penal Code and the New York Revised Penal Law have tried to exclude this type of case from first degree kidnaping by differentiating on the basis of the movement and duration of detention of the victim. The Model Penal Code provides for kidnaping only where the kidnaper removes the victim from his place of residence or business, or a substantial distance from the vicinity where he is found, or if the kidnaper unlawfully confines the victim for a substantial period in a place of isolation. New York has selected the arbitrary figure of twelve hours to designate the point in the course of a criminal project at which the abduction becomes a major offense in itself and not merely a facet of some other crime."

The minutes following the presentation of the first draft indicate that the drafters considered the situation where kidnapping charges are brought in addition to robbery or rape charges. The minutes reveal that the drafters intended to prevent conviction and sentencing for kidnapping when the detention was merely incidental to a rape or robbery.[3] The difficulty facing

---

[3] Criminal Law Revision Commission, Subcommittee No. 2, Minutes, Oct. 25, 1968, pp 2-3. The minutes read in relevant part as follows:

"She [Miss Lavorato, Research Counsel] called attention to the use of 'substantial' in subsection (1) and said the word involved an important policy decision in light of the number of kidnaping-robbery cases and kidnaping-rape cases where the defendant was prosecuted both for the offense of robbery or rape and also for the offense of kidnaping. Subsection (1) was designed to prevent prosecution of a defendant for
*(Continued on following page)*

the drafters, however, was to provide the flexibility to cover diverse kidnapping fact situations, yet rationally restrict prosecutorial discretion to punish.[4]

*(Continued from previous page)*

kidnaping, where he would be subject to life imprisonment or the death penalty, when the crime actually amounted to a rape or robbery. The Model Penal Code had accomplished this objective by employing 'substantial' to differentiate between a detention which would be of such duration that it would become a kidnaping as opposed to detention for a shorter period incidental to the commission of another crime. She gave as an example the detention of a bank employe for 20 minutes while the bank was being robbed and indicated that under the draft section such an act would be robbery and not kidnaping. The New York code, instead of using 'substantial,' had included an arbitrary time limit of 12 hours but Miss Lavorato said she had rejected this approach to avoid problems which occurred when an arbitrary time limit was employed and had used 'substantial' so that it would be a judicial determination whether the person was taken a substantial distance or was held a substantial period of time.

"The committee agreed that 'substantial period' was preferable to setting an arbitrary time limit. Mr. Paillette [Criminal Code Revision Project Director] commented that the drafters of the Model Penal Code realized that a term could be defined just so far and if the statute was not going to be tied to a definite number of hours, the best course was to leave some discretion to the court to look at the total circumstances of the crime.

"Justice Sloan questioned the meaning of the phrase 'or a substantial distance from the vicinity where he is found.' Miss Lavorato explained that the phrase was intended to differentiate between a situation where a person was removed from the place where he was found by the kidnaper to a place not within the immediate vicinity as opposed to a mere displacement incidental to another offense, such as removing a person to another room. Justice Sloan contended that the distance the person was moved was unimportant. The victim could be concealed in a place only a few feet from where he was found, he said, and it could be difficult or impossible to find him."

[4] Compare, Comments, Section 212.1, Kidnapping, Model Penal Code, Tent. Draft No. 11 (1960) pp 13-15. The commentary states in part:

"[I]t is desirable to restrict the scope of kidnapping, as an alternative or cumulative treatment of behavior whose chief significance is robbery or rape, because the broad scope of this overlapping offense has given rise to serious injustice, as well as to distortion of criminal statistics.

"Examples of abusive prosecution for kidnapping are common. Among the worst is use of this means to secure a death sentence or life imprisonment for behavior that amounts in substance to robbery or rape, in a jurisdiction where these offenses are not subject to such penalties. [citations omitted.]

"* * * * *

*(Continued on following page)*

The language of the proposed kidnapping statutes was revised three times.[5] The commentary following *each* revision included the above-quoted passage.[6] This

*(Continued from previous page)*
"The blame cannot be placed exclusively at the door of the prosecutor for choosing to indict for kidnapping. When an especially outrageous crime is committed there will always be public clamor for the extreme penalty which the laws permit, and it is asking too much of public officials and juries to resist such pressures. Rather it is precisely the obligation of penal legislators to minimize opportunities for such injustice by clearly and rationally restricting discretion to punish. Demands for high penalties, e.g., in aggravated cases of rape, should be satisfied by appropriate provision in the rape legislation itself.

"\* \* \* \* \*

"It is necessary, therefore, to define an aggravated offense of kidnapping which shall consist of removal or confinement involving substantial isolation of the victim where the duration of the isolation, the intention of the kidnapper, or other circumstances, makes the behavior specially terrifying and dangerous."

[5] The committee considered several alternative drafts for kidnapping in the first degree. The primary area of concern was the definition of the scope of the restraint or confinement. Criminal Law Revision Commission, Subcommittee No.2, Kidnapping and Related Offenses, Minutes, Dec. 12, 1968, pp 1-3; Criminal Law Revision Commission, Full Committee, Minutes, Mar. 20, 1969, pp 2-3. The terms "restrain" and "abduct" were eliminated in Preliminary Draft No. 4, and replaced by the current definition in ORS 163.215 of "without consent." Criminal Law Revision Commission, Drafts, Kidnapping and Related Offenses, Preliminary Draft No. 4, April 1969, pp 1-2.

[6] Criminal Law Revision Commission, Drafts, Kidnapping and Related Offenses, Preliminary Draft No. 3, Feb. 1969, pp 7-8; *Id.,* Preliminary Draft No. 4, April 1969, p 6; *Id.,* Tentative Draft No. 1, Aug. 1969, p 6.

The minutes of the final meeting on the proposed kidnapping statutes disclose that the "double prosecution" issue was again raised. The minutes state in relevant part as follows:

"Representative Haas asked where the abduction of a woman with intent to rape her would fall.

"Mr. Paillette replied that it could fall under subsection (4) [to terrorize the victim or another person] and Mr. Tanzer [now Judge Tanzer] added that it could also fall under rape.

"Mr. Paillette agreed and advised that one of the main purposes of the approach taken to kidnapping was to avoid any use of the kidnapping as a substitute for some other crime."

Criminal Law Revision Commission, Full Commission, Minutes, June 17, 1969, p 9. Compare, Commission Tape 67, Side One at 1076-1090 (Statement following Mr. Paillette's last above-quoted statement: "If it's robbery, it's robbery; if it's rape, it's rape.")

passage was also included in the tentative and final draft commentaries, but the drafters added the following paragraph:[7]

> "The proposed draft solves this problem [of excluding abductions which are incidental to or an integral part of the commission of an independent crime] by strictly limiting kidnapping in the first degree to only those instances where the actor's purpose in abducting falls within subsection (1) of [ORS 163.235 (Kidnapping in the First Degree)]."

This paragraph of commentary is less than clear. In the preceding paragraph of commentary, the drafters discussed the problem of unwarranted kidnapping convictions where the abduction is merely incidental to a robbery or rape, citing the Model Penal Code and New York approaches to this problem. The "solution," however, refers only to Oregon's first degree kidnapping statute, and states that this offense is strictly limited by the words of the statute itself.

From this history we draw the inference that the Commission, and subsequently the legislature, intended that there be no conviction of the defendant for the separate crime of kidnapping where the detention or asportation of the victim is merely incidental to the accomplishment of another crime, particularly that of robbery or rape. On the other hand, we infer that the Commission and legislature perceived no reason not to prosecute and punish a malefactor for the separate crime of kidnapping where the detention *or* asportation is *not merely incidental* to the commission of the underlying crime.

The drafting technique utilized to accomplish the legislative purpose is manifested in the definition of the crime of kidnapping. The Commission reasoned that even though the malefactor's conduct offended

---

[7] Criminal Law Revision Commission, Drafts, Kidnapping and Related Offenses, Temporary Draft No. 1, p 6; Proposed Oregon Criminal Code, Final Draft and Report, July, 1970, Kidnapping and Related Offenses, pp 99-100.

the statutory injunctions against rape or robbery, he would be guilty of kidnapping also if in committing rape or robbery he took the victim a "substantial distance" or held the victim "a substantial period of time." See n. 3, *supra*. [8] As finally enacted the law does not even require that there actually be a substantial interference with the victim's personal liberty; it is only necessary that the perpetrator have the "*intent* to interfere substantially*" with the victim's personal liberty to make the malefactor guilty of kidnapping if he commits an act proscribed by ORS 163.225. We find nothing in legislative history to indicate the legislature intended by its adverb "substantially" anything other than was intended by the Commission in its use of the adjective "substantial."

The end result is that the legislature has left it to the process of adjudication to determine whether there was an intent to interfere substantially. Compare Miss Lavorato's discourse in footnote 3, *supra.*

The mechanics of determining whether there is a separate crime of kidnapping do not initially depend on a post verdict inquiry. Assume that one is charged, as in the case at bar, with both rape and kidnapping against the same victim. To raise the issue of his liability for a separate conviction of kidnapping, at the appropriate time the defendant can test the sufficiency of the state's evidence to support the element of his intent by a motion for judgment of acquittal on the kidnapping charge. ORS 136.445. As in other cases the trial judge must then determine whether the evidence, viewed in the light most favorable to the prosecution, is sufficient to justify a rational factfinder in finding such intent beyond a reasonable doubt. *Jackson v. Virginia,* 443 US 307, 99 S Ct 2781, 61 L Ed2d 560 (1979). *See also, Pilon v. Bordenkircher,* 441 US

---

[8] In the abstract we find it somewhat difficult to envision forcible rape or sodomy which does not entail "substantial" interference with the personal liberty of the victim; however, it is readily apparent that the drafters of this legislation were attempting to describe conduct of the malefactor *not ordinarily inherent* in the sexual misconduct itself.

1, 100 S Ct 7, 62 L Ed2d 1 (1979). If the ruling is adverse, the claim of error has been preserved and the contention of want of the requisite intent may be presented to the appellate courts in case of a verdict of guilty. If on appeal it is held that there was trial court error in this respect, the conviction resulting from the verdict will be reversed. If there is held to be no error, the defendant will have been found to be guilty of the separate crime of kidnapping *as intended by the legislature* and therefore subject to punishment for that crime because he has been adjudged guilty of conduct which the legislature has found to be not "merely incidental" to the rape.

There is no occasion in this case for this court to determine whether there was sufficient evidence to prove the element of intent under ORS 163.225. There was no motion for acquittal in the trial court. The trial court instructed that the jury must find such intent beyond a reasonable doubt. The jury so found. Defendant requested no special instruction concerning this element. Defendant did not raise this issue at the time of sentencing.[9] In the Court of Appeals the defendant was unable to make any assignment of error in this respect which could comply with Rule 7.19, Rules of Procedure, Supreme Court and Court of Appeals of the State of Oregon. The Court of Appeals affirmed from the bench, and we have no way of knowing the basis of its rejection of this claim of the defendant that his separate conviction and sentence for kidnapping is error. Whatever the reason of that court, it did not err in this respect.

---

[9] In this respect defendant's counsel, prior to the pronouncement of sentence, raised an altogether different matter:

"I believe that the sodomies would merge and that judgment could only be entered upon the conviction for rape, kidnapping, and one sodomy."

Nothing we have said concerning the failure of this defendant to raise the issue of a single sentence for the rape and kidnapping before the trial judge is to be taken as any holding by this court that the matter can be raised at that late stage. Such a case is not before us; therefore, we make no ruling thereon.

[422]

In summary, the legislature said there may be a ■ separate conviction and sentence for kidnapping only when it is not incidental to another crime, and it may be found not to be incidental if the defendant had the intent to interfere substantially with the victim's personal liberty. That intent was here charged and found by the jury. There was no challenge to the sufficiency of the evidence to support that finding. Through the adjudicative process, as intended by the legislature, it has been established that the detention and asportation of this victim by this defendant was not "merely incidental" to his rape upon her. The defendant's position for "merger" of the kidnapping conviction and sentence into the rape conviction and sentence rests upon the contention that the kidnapping was merely incidental to the rape. The position is not well taken and the contention is rejected.

## II.

The defendant's second argument is that the sever-  ■. al acts of sodomy committed in a single criminal episode should result in a single sodomy conviction and therefore a single sentence. The defendant alternatively contends that the rape conviction and the sodomy convictions should be treated as a single criminal episode and therefore should not be punished separately. The defendant may be *charged* with several counts of both rape and sodomy arising out of the same episode, and the jury may consider the several counts in the single prosecution. *See State v. Cloutier,* 286 Or 579, 586, 596 P2d 1278 (1979). The issue in this case is whether the defendant who is found guilty by the trier of fact on the several counts can be cumulatively sentenced.

### A. *The several acts of sodomy.*

The defendant at the sentencing proceeding argued to the trial judge that "the sodomies would merge and that judgment could only be entered upon the conviction for rape, kidnapping, and *one sodomy."*(Emphasis

added). The defendant did not raise this specific argument in September, 1978, when the case was argued in the Court of Appeals; rather, he argued that the 100-year sentence was excessive. At that time, the Court of Appeals' decision in *State v. Cloutier,* 33 Or App 121, 575 P2d 996 (1978), had not yet been reversed by this court. The Court of Appeals' decision in *Cloutier* concluded that the definition of an "offense" in ORS 161.505 permitted separate convictions and separate sentences for the several offenses committed in a burglary/theft episode. This court reversed that decision on June 12, 1979, 286 Or 579, and concluded that a policy of rationality and proportionality should be applied in the sentencing of a multiple offender:

"Taken together, the legislature's recent enactments reflect a continuing policy to bring rationality and proportionality to the penal dimension of criminal law, a dimension often marked by haphazard statutory penalties, by a deliberate or fortuitous multiplicity of charges, and by the tactical opportunities these factors offer in plea negotiations." 286 Or at 594.

One week prior to oral argument in this court, defendant filed a "Memorandum of Additional Authorities," in which, in light of our decisions in *Cloutier* and *State v. Harris,* 287 Or 335, 599 P2d 456 (1979), he reasserted his argument made in the trial court that a single sentence for sodomy was the appropriate disposition for his sodomitical conduct. The defendant, in oral argument before this court on September 7, 1979, stated:

"In light of the opinion in *Cloutier,* as I pointed out in my memorandum of supplemental authorities, there is one point that we wish to bring up again that was brought out at the time of sentencing originally in the trial court, and that's the question of how many sentences on sodomies can be imposed."

The defendant then argued that one sentence was appropriate because the first degree sodomy statute was violated in three different ways in a single episode. The state responded to this argument stating

[424]

that separate sentences are justified for each act of sodomy because the victim is subjected to additional humiliation and fear, citing *State v. Steele,* 33 Or App 491, 577 P2d 524 (1978).

The defendant's argument that one sentence should be imposed for the sodomy offenses was timely raised in the trial court, and was argued before this court. We believe, in all the circumstances, this question is in an appropriate procedural position for this court's consideration. *Cf.,* Rule 7.19, Oregon Rules of Appellate Procedure.

The first degree sodomy statute, ORS 163.405, uses the term "engage in deviate sexual intercourse," which is further defined in ORS 163.305(1) as "sexual conduct between persons consisting of contact between the sex organs of one person and the mouth or anus of another." In the present case, three counts of sodomy were charged because the defendant engaged in deviate sexual intercourse in at least three different ways in the same episode.[10]

The separate counts of sodomy are appropriate in the prosecutorial stage because the prosecution may be able to prove one type of sodomy but not another. The jury may appropriately return verdicts of guilty on all three counts. At the sentencing stage, however, the court's concern is with the defendant's criminal responsibility for a single criminal episode.[11]

The term "criminal episode" is defined in ORS 131.505(4) for purposes of former jeopardy:

"'Criminal episode' means continuous and uninterrupted conduct that establishes at least one

---

[10] The evidence discloses that the defendant forced the victim to put her mouth on his genitals, he attempted anal intercourse, and he put his mouth on the victim's genitals. The victim stated at trial that she was not certain as to the sequence of the various acts.

[11] The posture of this case is not such as to pose for the sentencing judge the necessity of preserving all convictions pending finality thereof. Where a sentencing judge may be in that position, the suggestions we made in *State v. Cloutier,* 286 Or 579, 600-603, 596 P2d 1278 (1979), may prove helpful.

offense and is so joined in time, place and circumstances that such conduct is directed to the accomplishment of a single criminal objective."

This case does not involve former jeopardy issues; however, the term "criminal episode" is relevant to the sentencing stage because it prescribes when the required joinder of offenses will bring the offenses before the sentencing court in one proceeding. *See State v. Cloutier, supra,* 286 Or at 595.

No statute in Oregon authorizes or prohibits multiple sentences when the *same* criminal statute is violated more than once in a single criminal episode. This court held in *State v. Welch,* 264 Or 388, 505 P2d 910 (1973), that the publishing of two forged checks in the same transaction constituted one offense and therefore separate sentences on the two counts was improper. The court looked for legislative intent behind the forged instrument statute, and, finding no legislative history, the court found guidance from the Supreme Court in *Bell v. United States,* 349 US 81, 75 SCt 620, 99 LEd 905 (1955). The defendant in that case was prosecuted under the Mann Act for transporting two women in one trip across state lines for immoral purposes. The Supreme Court held that the defendant was not subject to separate sentences on the two counts. The court noted the ambiguity in the possible units of the offense but concluded, "It may fairly be said to be a presupposition of our law to resolve doubts in the enforcement of a penal code against the imposition of a harsher punishment." 349 US at 83. The rationale compelling a single conviction in *Welch* and *Bell* was that the defendant should not be twice punished for one criminal episode unless the legislature has clearly prescribed additional penalties. *Cf.,* A. Campbell, Law of Sentencing, 241-246 (1978).

The facts of the present case, however, can be distinguished from *State v. Welch, supra,* and *Bell v. United States, supra,* because in those cases, the

defendant *simultaneously* committed two identical criminal violations; in the present case the defendant in the course of the criminal episode committed *successive,* repeated acts of rape and sodomy.

The first degree rape statute, ORS 163.375, uses the term "sexual intercourse" which, under ORS 163.305(7), "occurs upon any penetration however slight * * *." A rape episode may involve more than one penetration, yet it would be absurd to sentence the defendant to twenty years for each act of penetration. The severity of the sentence for the single episode of rape should reflect the aggravated circumstances of a particularly brutal or prolonged rape. Likewise, there may be several deviate contacts in one episode of sodomy. Separate sentences for each deviate contact result in a punishment disproportionate to the defendant's criminal responsibility for a single criminal episode. *Cf., People v. Tate*, 37 Ill App 3d 358, 346 NE2d 79 (1976) (several acts of sodomy in a single episode constitute a single offense); *People v. Cox,* 53 Ill 2d 101, 291 NE2d 1 (1972) (violation of the same sexual offense statute in two different ways in one episode constitutes one offense). *See,* Note, Cumulative Sentencing for Offenses Within a Single Transaction, 26 Fla L Rev 367 (1974).

By analogy, there are statutes in Oregon which may be violated in several distinct ways. For example, the offense of robbery in the first degree, ORS 164.415, can be committed in three different ways: by being armed with a deadly weapon, by using or attempting to use a dangerous weapon, and by causing or attempting to cause serious physical injury to any person. If a robber, armed with a loaded pistol, first brandished his pistol, then, moments later, pulled a knife and attempted to stab his victim, then took the victim's wallet and fled, would he be subject to three separate 20-year sentences for robbery? The legislature never addressed this question, so the courts are left with a difficult policy choice. Certainly the victim is exposed

to additional fear, danger, and humiliation by the successive assaults.[12] Yet, the length of a *single* sentence for first degree robbery should reflect the aggravated circumstances of the crime.

The first degree robbery statute can be violated three different ways; there is no denominated offense of "armed robbery" as distinguished from "robbery by using a dangerous weapon." Likewise, the first degree sodomy statute can be violated in at least three different ways: the offender can put his mouth to the victim's genitals, or he can put his genitals to the victim's mouth, or to her anus. It is a misstatement to say, as does the dissent, there is an "offense of oral sodomy" as differentiated from "the separate offense of anal sodomy."

---

[12] This argument was articulated in *State v. Steele,* 33 Or App 491, 577 P2d 524 (1978). The authority cited in that case, however, does not support an argument for separate sentences for sodomies committed by oral and by anal contacts in a single episode. The cases cited include *State v. Hill,* 104 Ariz 238, 240, 450 P2d 696 (1969), where the defendant argued that it was error for the jury to consider two counts of rape and two counts of lewd conduct. He argued he could be *charged* with only one count of rape and one count of lewd conduct. The court held that the defendant can be *charged* in several counts. The defendant received concurrent sentences for rape, lewd conduct, and burglary. Another case cited is *People v. Helton,* 39 Ill App 3d 672, 674, 349 NE2d 508 (1976), where the defendant appealed his concurrent sentences for deviate sexual assault, intimidation, battery, and unlawful restraint, all arising out of a single rape episode. The defendant argued that because his single motivation was sexual gratification, a *single* sentence for all the offenses was appropriate. The court held that the unlawful restraint conviction could not stand independently from the other three offenses, but that the other three offenses were each separate offenses subject to separate, concurrent sentences. The last case cited is *Lillard v. State,* 528 SW2d 207 (Tenn Cr App 1975), where the defendant appealed his two consecutive sentences for two rapes committed upon the same victim on the same night. The evidence disclosed that the defendant raped the victim at one location, terminated the rape, drove to another location, and again raped the victim. The court stated:

"While requisite penetration may occur many times during a single episode of intercourse, there exists in that context the single basic intent to have sexual intercourse and the same force and coercion is common to the penetration, even if they be momentarily interrupted.

"But we do not agree that a man who has raped a woman once may again assault and ravish her with impunity, *at another time and at another place,* as was done here." (Emphasis added) 528 SW2d at 211.

The court upheld the two consecutive sentences for rape.

The dissent implies that the sodomitical conduct took place over a period of almost 40 minutes. Actually the entire course of criminal conduct lasted 40 minutes.

Separate punishments for several acts of sodomy would be appropriate if the defendant, after one act, starts anew after a time of reflection. *See* Remington and Joseph, Charging, Convicting and Sentencing the Multiple Criminal Offender, 1961 Wis L Rev 528, 548-549 (1961). *Cf., Lillard v. State,* 528 SW2d 207 (Tenn Cr App 1975). The time period when one episode ends and another begins is not always clear. *Cf., State v. Welch, supra,* 264 Or at 394-395. In the present case, however, the defendant's conduct can clearly be said to involve a single criminal episode, therefore one conviction and sentence for sodomy is appropriate.

Accordingly we hold that the trial court erred in imposing separate sentences for the three counts of sodomy in a single episode and that the case must be remanded for resentencing. The sentence imposed may appropriately reflect that the victim was exposed to additional fear, danger, and humiliation by the successive offenses of sodomy in the single episode.

B. *The rape and sodomy sentences.*

The defendant alternatively contends the rape and sodomy were two offenses within a single criminal episode with a single criminal objective, therefore only one sentence is appropriate.

The defendant could be described as having a criminal objective to violate sexually his victim; nevertheless, he did commit sexually offensive acts which the legislature has chosen to differentiate as rape and sodomy. *Cf.,* Johnson, Multiple Punishment and Consecutive Sentences, 58 Cal L Rev 357, 364-365 (1970). Although the offenses of rape and sodomy in this case share a unity of time, location, circumstance, and objective, the legislature has chosen to make rape and

[429]

sodomy two distinct offenses requiring different elements of proof. A rape always requires proof of a penetration, however slight, *see* ORS 163.305(8), whereas a sodomy always requires proof of a deviate sexual contact, *see* ORS 163.305(1). We conclude, therefore, that the legislature intended that separate sentences were permissible for rape and sodomy offenses arising out of the same criminal episode.

## III

Although the Oregon Legislature has not specifically limited the trial court's discretion to impose consecutive sentences,[13] the trial court does not have unlimited discretion to impose consecutive sentences for the separate offenses. Sentencing practices must conform to the stated purposes of the revised criminal code in ORS 161.025: "[t]o prescribe penalties which are proportionate to the seriousness of offenses," and "[t]o safeguard offenders against excessive, disproportionate or arbitrary punishment."[14]

Arbitrary sentencing practices have recently become the subject of widespread concern, generating substantial criticism.[15] The lack of guidelines for im-

---

[13] *Cf.,* Ill Rev Stat ch 38, § 1005-8-4 (Supp 1978). ORS 166.230, however, provides a mandatory consecutive sentence for not more than ten (10) years for committing a felony while armed with a firearm.

[14] ORS 161.025(1):

"The general purposes of chapter 743, Oregon Laws 1971, are:
"\* \* \* \* \*
"(f) To prescribe penalties which are proportionate to the seriousness of offenses and which permit recognition of differences in rehabilitation possibilities among individual offenders.
"(g) To safeguard offenders against excessive, disproportionate or arbitrary punishment."

[15] *See, e.g.,* Symposium on Sentencing, 7 Hofstra L Rev 1-138 (1978); De Costa, Disparity and Inequality of Criminal Sentences: 14 How L J 29, (1968); Note, Sentencing Disparity: Causes and Cures, 60 J Crim L, Crim & Pol Sci 182 (1969); Coffee, The Future of Sentencing Reform: Emerging Legal Issues in the Individualization of Justice, 73 Mich L Rev 1362 (1975); Morris, Towards Principled Sentencing, 37 Md L Rev 267 (1977); Hennessey, Disparity in Sentencing, 3 New Eng Journ on Prison Law 5 (1976); Weigel, Appellate Revision of Sentences: To Make the Punishment Fit the Crime, 20 Stan L Rev 405 (1968); Frankel, Lawlessness in Sentencing, 41 U Cinn L Rev 1 (1972); Note, Disparity and Discretion in Sentencing: A Proposal for Uniformity, 25 UCLA L Rev 323 (1978).

posing concurrent and consecutive sentencing is a particular problem in modern sentencing practices.[16] The Model Penal Code,[17] the Model Sentencing Act,[18] and the ABA Standards Relating to Sentencing Alternatives and Procedures[19] all state a clear preference for

---

[16]

"At common law sentences for felonies could not be consecutive. * * * Since originally the sentence was invariably death the question was of no importance. However, cumulative punishments were not unknown and prisoners were sometimes hanged for one offence, drawn for another, and quartered for a third. When the death penalty was abolished for a number of offences at the beginning of the nineteenth century the problem began to have practical consequences.

"* * * * *

"Although in practice little trouble appears to be caused by the problem this is because no-one has realized how chaotic the principles are." Newark, Samuels, & White, Sentencing the Multiple Offender: Concurrent and Consecutive Sentences, 23 No Ire L Q 133, 134, 172 (1972).

[17] Model Penal Code 27.06 (Proposed Official Draft 1962).

[18] Model Sentencing Act § 22 (1963):

"Separate sentences of commitment imposed on a defendant for two or more crimes constituting a single criminal episode shall run concurrently. Sentences for two or more crimes not constituting a single criminal episode shall run concurrently unless the judge otherwise orders."

Cf., Model Sentencing Act, 2d Edition § 17 (1972), reprinted in 18 Crime and Delinquency 340, 367 (1972).

[19] ABA Standards Relating to Sentencing Alternatives and Procedures § 3.4(b) (Approved Draft 1968):

"(b) Consecutive sentences are rarely appropriate. Authority to impose a consecutive sentence should be circumscribed by the following statutory limitations:

"(i) The aggregate maximum of consecutive terms should not be permitted to exceed the term authorized for an habitual offender (section 3.3) for the most serious of the offenses involved. If there is no provision for an habitual offender for the offenses involved, there should be a ceiling on the aggregate of consecutive terms which is related to the severity of the offenses involved; and

"(ii) The aggregate minimum of consecutive terms should be governed by the limitations stated in section 3.2; and

"(iii) The court should not be authorized to impose a consecutive sentence until a presentence report (sections 4.1-4.5), supple-
*(Continued on following page)*

[431]

concurrent over consecutive sentences for multiple offenses within a single criminal episode.[20] The ABA Standards state that the court should be authorized to impose consecutive sentences only after a finding that this is necessary to protect the public.[21]

ORS 137.120(2) requires the sentencing court in felony convictions to state on the record the reasons for the sentence imposed. This requirement was added in 1977 to cause the trial court to clarify the court's sentencing rationale and to supply information for possible sentence review.[22] *Cf., State v. Biles* 287 Or 63, 597 P2d 808 (1979). In light of this mandate for articulated sentencing rationales and the current recognition that consecutive sentences are appropriate only when the defendant poses an unusual risk to the safety of the public, we hold that the trial judge must affirmatively state the reasons for imposing consecutive sentences for separate offenses arising from the same criminal episode. These reasons must be consistent with the legislative policies concerning proportional sentencing, rehabilitation, deterrence, and protection of the public. *Cf.,* ORS 161.025(1)(f)(g); ORS 144.780; *People v. Meints,* 41 Ill App 3215, 355 NE2d 125, 129-130 (1976); *State v. Underwood,* 353 So2d 1013, 1019 (La 1977); *State v. Carroll,* 66 NJ 558, 334 A2d 17 (1975); *Gray v. State,* 538 SW2d 391 (Tenn 1976).

---

*(Continued from previous page)*

mented by a report of the examination of the defendant's mental, emotional and physical condition (section 4.6), has been obtained and considered; and

"(iv) Imposition of a consecutive sentence should require the affirmative action of the sentencing court. The court should be authorized to impose a consecutive sentence only after a finding that confinement for such a term is necessary in order to protect the public from further criminal conduct by the defendant."

[20] *Cf.,* R. Dawson, Sentencing—The Decision as to Type, Length, and Conditions of Sentence 207-210 (1969).

[21] ABA Standards Relating to Sentencing Alternatives and Procedures § 3.4(b)(iv) (quoted at note 19, *supra).*

[22] Report of the Governor's Task Force on Corrections, 17, 72 (1976).

We now examine the trial court's sentencing rationale in the present case. The presentence report recommended one hundred years incarceration with a minimum of fifty years imprisonment for the seventeen-year-old defendant. The trial judge sentenced him to five consecutive twenty-year terms but directed a minimum sentence of ten years, stating the judge's hopes for reformation. He stated that defendant's insult to another human being deserved punishment and that he hoped the sentence would have a deterrent effect. The judge noted the defendant's refusal to accept psychiatric help and stated that society was entitled to be protected from the defendant's predatory conduct.[23]

## IV

The defendant claims that his sentences should be held excessive under substantive sentence review, ORS 138.040. The defendant's legal challenges to the separate sodomy sentences and our disposition thereof result in a remand for resentencing. The trial court will sentence anew and there is nothing now before us upon which to exercise sentence review under ORS 138.040. Neither is there any occasion to consider whether this court is empowered under that statute to conduct an independent review.

Remanded for resentencing.

**TONGUE, J.,** concurring in part, dissenting in part.

I concur in the majority opinion in its holding that the trial court did not err in convicting and sentencing defendant separately for kidnapping, rape and sodomy. I dissent, however, from its holding that the trial court erred in entering separate judgments of

---

[23] The rationale for consecutive sentences should be addressed by the sentencing judge as a separate issue. The record indicates, however, that the trial judge was referring to the consecutive terms when he articulated his sentencing reasons.

conviction and sentences for each of the three counts of sodomy because: (1) That question is not properly before this court. It was not properly raised by the defendant and the state has had no fair opportunity to be heard on that question—the only question properly before the court being whether consecutive sentences were "excessive," and thus subject to substantive appellate review under ORS 138.040. (2) The decision by the majority on that question to the effect that the trial court had no power to enter separate judgments of conviction and separate sentences for the separate acts of sodomy because they were "disproportionate" to defendant's criminal responsibility for a single criminal episode is contrary to the probable intent of the legislature in such cases.

I. In considering the separate judgments of conviction and sentences for each of the three counts of sodomy, both the controlling statutes and the facts must be kept in mind. ORS 163.405(1)(a) provides that a person who "engages in deviate sexual intercourse with another person" is guilty of sodomy in the first degree if "[t]he victim is subjected to forcible compulsion by the actor." "Deviate sexual intercourse" is defined in ORS 163.305(1) as "sexual conduct between persons consisting of contact between the sex organs of one person and the mouth or anus of another."

The facts of this case relating to the acts of rape and sodomy upon the victim, following her kidnapping, as stated in defendant's petition for review, are as follows:

> "Upon reaching the side yard, the person told her to lie down on her back and not to make any noise. He held the knife to her throat and proceeded to fondle her after unbuttoning her shirt. The person laid down on his side and unzipped his pants and exposed himself to her and asked her to take his penis into her throat. He told her at that time, 'If you bite me, I will kill you.' He told her to lie on her stomach. He put his body on top of hers after unbuttoning her pants. He then attempted to have anal intercourse with her.

Ms. * * * told him if he did, it would make her cry out. He then engaged in sexual intercourse with her and after that again put his penis into her mouth. Later on he put his mouth to her genitals. * * * After the second incident of anal intercourse, he turned over on his side and told her she could stand up long enough to pull up her jeans. When she pulled up her jeans, she realized that his pants were around his knees and ran."

That incident, from the time the victim was first abducted with a knife at her throat while walking down a street and forced to walk two blocks to a back yard where she was raped and sodomized three times, to the time when she escaped and ran away, lasted 40 minutes.

The indictment set forth three separate sodomy counts: one for deviate sexual intercourse "by causing the sex organs of the said defendant to be brought into contact with the mouth" of the victim, a second for deviate sexual intercourse "by causing the sex organs of the said defendant to be brought into contact with the anus" of the victim, a third for deviate sexual intercourse "by causing the sexual organs of (the victim) to be brought into contact with the mouth of the defendant."

As stated by the majority, each of the three sodomy counts was submitted to the jury, which returned a verdict of guilty on each count, as well as on the separate counts for kidnapping and rape. The trial court then entered a judgment of conviction on each count and sentenced the defendant to a term not to exceed 20 years on each count, to run consecutively, and with directions that defendant was to serve a minimum of 10 years.

As stated by the majority, the defendant, in objecting to the three sentences, contended that the sodomies would *merge* and that judgment could be entered for "*one sodomy.*"[1] The only assignment of

---

[1] There was no "merger" of offenses in this case for reasons stated in footnote 5.

[435]

error in defendant's brief on appeal to the Court of Appeals, however, (other than that the trial court erred in its sentence for both rape and kidnapping) was that:

> "[T]he circuit court erred in *sentencing* defendant on the five counts for a term not to exceed 100 years." (Emphasis added)

In support of that assignment of error defendant's contention was that:

> "Defendant appeals this sentence pursuant to ORS 138.040 (which provides for substantive sentence review of excessive sentences by the Court of Appeals) on the grounds that it is *excessive.*"(Emphasis added)[2]

More specifically, defendant's contention on its appeal to the Court of Appeals was that:

> "In *State v. Steele,* 33 Or App 491, 577 P2d 524 (1978), the defendant was convicted of two counts of sodomy and sentenced to 20 years imprisonment on each count. The second sodomy conviction was to run *concurrently* with the first. *This is precisely what the court should have done in this case with the three counts of sodomy and the rape.*"(Emphasis added)[3]

---

[2] ORS 138.040 provides, in part:

> "The defendant may appeal to the Court of Appeals from a judgment on a conviction in a district or circuit court, including a judgment *where the court imposes a sentence which is cruel, unusual or excessive* in light of the nature and background of the offender or the facts and circumstances of the offense. * * * If in the judgment of the appellate court the punishment imposed by the sentence appealed from is cruel, unusual or excessive, the appellate court shall direct the court from which the appeal is taken to impose the punishment that should be administered." (Emphasis added)

Defendant also cited Article I, Section 15 of the Oregon Constitution, which provides:

> "Laws for the punishment of crime shall be founded on the principles of reformation, and not of vindictive justice."

[3] Defendant also contended that:

> "The ABA Standards of Criminal Justice Relating to Sentencing Alternatives and Procedures *disapprove of consecutive sentences,* referring to them as 'rarely appropriate.'" Standard 2.4(b).

The Court of Appeals apparently considered and rejected these contentions in affirming without opinion the separate judgments of conviction and the consecutive sentences for each of the three counts of sodomy.

In defendant's petition for review by this court defendant's primary emphasis was upon the prosecution of the defendant for both kidnapping and rape and the only remaining contention, again, was that:

> "The legislature, in amending ORS 138.040 and 138.050 intended to provide for *substantive appellate review of sentences.*" (Emphasis added)[4]

and that the *consecutive* sentences imposed by the trial court were improper and should thus be reviewed under those statutes.

After the filing of defendant's petition for review, this court decided *State v. Cloutier,* 286 Or 579, 596 P2d 1278 (1979), and heard argument in *State v. Harris,* 287 Or 335, 599 P2d 456 (1979), although *Harris* had not been decided when this case was argued in this court.

Defendant then filed a supplemental memorandum acknowledging that although the issue had been raised at trial, as in *Harris,* "he did not assign as error the trial court's sentencing of defendant on those separate sodomy charges and a rape count." Defendant contended, however, that "in light of *Cloutier,*" he would "return to his *original position* that a single *sentence* on one count was appropriate" and that the separate sentences by the trial court were *"excessive."*

As previously noted, defendant's original position had been that the *sentence* was subject to *substantive sentence review* by the Court of Appeals under ORS 138.040 on the ground that it was an excessive sentence for the reason that *consecutive* sentences had

---

[4] For the provisions of ORS 138.040, see note 2 above. ORS 138.050 sets forth similar provisions relating to sentences of defendants who have pleaded guilty or "no contest."

been imposed, and that *concurrent* sentences should have been imposed. As also previously noted, defendant did not contest the separate judgments of conviction, but only the consecutive sentences.

The majority holds that the trial court erred "in imposing separate sentences for three counts of sodomy in a single [criminal] episode * * *." By its references to *Cloutier,* the majority obviously intended to apply to this case the holding by the majority of this court in *Cloutier* to the effect that when crimes of burglary and robbery arise from the same criminal episode, there can properly be only one judgment of conviction, as well as only one sentence. No such contention was made by this defendant either in his brief on appeal to the Court of Appeals or in his petition for review or supplemental memorandum to the court.

It follows, in my opinion, that the only question properly before this court relating to defendant's conviction and sentencing on each of three counts of sodomy is the question whether the *sentences* were excessive in that they were consecutive, rather than concurrent and thus were subject to substantive sentence review under ORS 138.040. It also follows, in my opinion, that the question whether there would be only one judgment of conviction and only one sentence for the three separate acts of sodomy, as decided by the majority, is not properly before this court in this case.[5]

---

[5] The decision by this court in *State v. Harris, supra,* neither compels nor supports a different result. *Harris* held (at 340) that when one offense, such as sodomy, necessarily includes another offense, such as sexual abuse, there is a merger of the two offenses, with the result that a sentence for both offenses is subject to judicial review under ORS 138.040 as "excessive" even if not properly raised by assignment of error. The court was careful to point out, however, (at 341) that this is not true of an offense which may be committed without committing another offense and (at 342) affirmed separate sentences for such offenses.

In this case, each of the three acts of sodomy were separate offenses, were separately committed and could not have been committed at one and the same time. Defendant's briefs, petition and supplemental memoran-

*(Continued on following page)*

[438]

The majority holds that this question is properly before this court for decision in this case because it was raised at the time of trial by the defendant and was raised again by him in oral argument before this court, at which time the state attempted to respond to that contention, even though that question was not assigned as error in appellant's brief to the Court of Appeals and was not urged in his petition for review to this court.

In other words, the majority holds that if a defendant in a criminal case raises some question on trial which he does not assign as error on appeal or urge by petition for review, he can wait until oral argument before this court and then raise the question again. The majority also holds that in such an event, if the state attempts to make some response to that contention on oral argument, this court, in its new role as a "law-making court" rather than an "error-correcting court," can properly base its opinion, making "new law," upon a decision of such a question, rather than upon a decision of the questions raised by appellant's brief and petition for review.

This sets a new and important, if not dangerous, precedent for application in the consideration of petitions for review in future cases, both criminal and civil. It is a step that should only be taken deliberately and after full benefit of the adversary system—in this case only after the State of Oregon, through the Attorney General, has been afforded an opportunity to be

---

*(Continued from previous page)*

dum do not contend that separate judgments of conviction and separate sentences for each of these then separate acts of sodomy were improper, but only that the *consecutive* sentences imposed were "excessive," and thus subject to substantive sentence review under ORS 138.040.

The majority, however, upon holding that the three separate sentences for sodomy were improper, has declined to consider that question—the only question properly raised by defendant relating to the sentences for sodomy. As a result, the majority also declined to consider the further question whether this court is empowered by ORS 138.040 to conduct an independent sentence review since that statute, by its terms, confers that power upon the Court of Appeals.

heard on this important question by setting this case for further oral argument with or without further briefs.

In addition to the importance of this question as one of proper appellate procedure, is the related question of whether, in this case, the state has had a fair opportunity to be heard on the contention by defendant which provides the basis for the decision by this court of this case. It is elemental, if not required as a matter of constitutional due process, that each party in a litigated case, at least at the appellate level, is entitled to notice before trial or hearing of the affirmative contentions of his opponent in order that he may have a fair opportunity to prepare and present opposing evidence or arguments.

That basic requirement cannot properly be said to be satisfied by the fact that some attempt is made at a hearing to respond to a contention by an opponent when the party had no notice that such a contention would be made at the hearing. Yet the majority would decide this important case on the basis of just such a contention and would justify its action in doing so by the fact that the attorney for the state attempted to respond to the contention on oral argument before this court.

In my opinion, the majority has denied the State of Oregon a fair opportunity to be heard on the question which provides the basis for its decision of this case. As a result, the least that should be done by this court is to set this case for reargument or request further briefs upon the question whether the three consecutive sentences for the three acts of sodomy were not only excessive, so as to require substantive sentence review, as urged by defendant in his brief and petition for review, but were also improper in that only one judgment of conviction and sentence can properly be entered, and for only one of the three acts of sodomy, as now held by the majority of this court.

[440]

It would be particularly appropriate to set this case for reargument or request further briefs because the court is so closely divided on the important questions involved in this case and because one of the decisive votes in favor of the majority is that of a member of the court who has resigned as of January 21, 1980. I can understand and do not question the reasons and motives of the majority in its desire to make and publish a decision in this case before that date. With all due respect to the majority, however, I believe that simple fairness to the State of Oregon, as a party to this case, is a far more basic and compelling consideration.

This court has held many times, in both civil and criminal cases, that it will not reverse judgments entered by trial courts on grounds not properly raised by proper assignments of error on appeal. In my opinion, this is a salutory rule and one which should be followed by the court in this case.

II. In support of its holding that the trial court erred in entering separate judgments of conviction and separate sentences for each of defendant's three different offenses of sodomy, the majority appears to reason as follows:

(1) The "concern" of the court is "defendant's criminal responsibility for a single criminal episode." (Op. 425)

(2) In *State v. Welch*, 264 Or 388, 505 P2d 910 (1973), this court has "looked for legislative intent," but "the facts of this case can be distinguished" and the rationale of *Welch* is that a defendant "should not be twice punished for one criminal episode unless the legislature has clearly prescribed additional penalties." (Op. 426)

(3) "No statute in Oregon authorizes or prohibits multiple sentences where the *same* criminal statute is violated more than once in a single criminal episode." (Op. 426)

(4) It follows that separate convictions and sentences in this case were in error because separate

[441]

sentences for each deviate contact result in a punishment "disproportionate to the defendant's criminal responsibility for a single criminal episode," at least unless the defendant "after one act starts anew after a time for reflections." (Op. 427)

With all due respect to the majority, it is my opinion that both its major premise and its reasoning, based upon that premise, is faulty. The majority of this court in *State v. Cloutier, supra,* under different facts, held that when the defendant in that case committed the offenses of burglary and robbery in the same criminal episode, only one judgment of conviction and one sentence is proper. Regardless of my disagreement with that decision by the majority of this court in *Cloutier,* for reasons as set forth in my dissent in that case,[6] it is important to note that it is based primarily upon a finding that it was the intention or "policy" of the legislature, as revealed by recently enacted statutes, that there be "proportionality and rationality" in sentencing and that anything other than a single judgment of conviction and sentence in a burglary-robbery case would be contrary to that intent by the Oregon legislature. Such was the basis for the holding by the majority in *Cloutier,* rather than a holding that unless the legislature has clearly indicated a contrary intent, a defendant's "responsibility" for a single "criminal episode" is such as to prohibit as "disproportionate" more than one judgment of conviction and sentence for all crimes committed in the course of a criminal episode unless after each crime the defendant "starts anew after a time for reflection," as now held by the majority. In other words, the majority has "put the cart" (of criminal responsibility) "before the horse" (of legislative intent).

Assuming, however, as held by the majority in *Cloutier,* that the intention of the legislature is that there must be "proportionality and rationality" in sentencing, the question to be decided in this case is

---

[6] *See State v. Cloutier, supra,* 286 Or at pp 604 to 617.

whether the legislature would regard separate judgments of conviction and separate sentences for each of the three separate and different "offenses" of sodomy committed by the defendant in this case as "disproportionate and irrational."

The legislature, by ORS 161.505, has defined the term "offense" as follows:

"An offense is conduct for which a sentence to a term of imprisonment or to a fine is provided by any law of this state or by any law or ordinance of a political subdivision of this state. * * *"

As previously stated, ORS 163.405 provides that:

"(1) A person who engages in deviate sexual intercourse with another person or causes another to engage in deviate sexual intercourse commits the crime of sodomy in the first degree if:

"(a) The victim is subjected to forcible compulsion by the actor; * * *."

As also previously stated, ORS 163.305(1) provides:

" 'Deviate sexual intercourse' means sexual conduct between persons consisting of contact between the sex organs of one person and the mouth or anus of another."

In this case, as also previously stated, defendant was charged and convicted by a jury of sodomy in the first degree by "deviate sexual intercourse" of each of the three types specified in ORS 163.305(1). It necessarily follows that defendant was found guilty by the jury of three separate "offenses," in addition to the offense of rape, even though committed during the same "criminal episode."

The majority holds that it was not error for the trial court to enter a separate judgment of conviction and a separate sentence for rape, in addition to one judgment of conviction and sentence for sodomy. In other words, the majority holds that double convictions and sentences for rape and sodomy are not "disproportionate" or "irrational," even though committed during a single criminal episode.

[443]

Thus, the majority holds that when a defendant rapes a victim by "natural" sexual intercourse and then commits sodomy on the same victim by anal intercourse there can be two separate judgments of conviction and sentences, but that if a defendant commits an act of sodomy by "causing the sex organs of said defendant to be brought into contact with the mouth" of the victim (an act equally, if not more terrifying to the victim than rape by natural intercourse), followed by the same act of anal intercourse, the entry of two separate judgments of conviction and sentences, as in this case, is in error as "disproportionate" or "irrational."

If such be the law, to paraphrase Dickens, then "the law is an ass." And for the majority of this court to hold, as it must in order to justify such a distinction, that the legislature of Oregon intended such an absurd result is even more unbelievable.

To compound the confusion, as well as the "irrationality" of such a result, the majority, by its reliance upon *Cloutier*, necessarily approved of the submission by the trial court to the jury of each of the three separate counts for each of the three different types of "deviate sexual intercourse," and yet held that despite the jury verdict of guilty on each of the three counts, the trial court had power to enter a judgment of conviction and sentence on only one of them. It is entirely possible, however, that an appeal may be taken from the judgment of conviction of that one act of sodomy, whereas if judgments of conviction had been entered for the other two acts of sodomy, and if appeals had been taken from those judgments of conviction, they would have been affirmed on appeal.

In my judgment, this is a further reason why it can hardly be said that because the legislature intended to adopt a "proportionate" and "rational" program for sentencing, it must necessarily follow in a case involving three separate and different acts of sodomy there can be only one judgment of conviction. The only

[444]

answer to this problem by the majority would be to hold, as suggested in *Cloutier* (at 602), that because of the possibility of reversal of the judgment of conviction for the one act of sodomy, the jury verdicts of conviction for the other two and different acts of sodomy be held in a "state of suspended animation" so as to provide a basis for entry of a judgment of conviction on one of them in the event of an appeal and reversal of the prior judgment of conviction, presumably to be followed by another appeal, with continued bail and, if successful, by entry of judgment of conviction for the third act of sodomy, followed by yet another appeal, with continued bail. It is inconceivable to me that the legislature intended such an incongruous, complicated and time-consuming result.

To me, the legislative intent and plan to eliminate "disproportionate" sentences is far more simple and "rational." Or. L. 1977 ch 372, enacted in 1977, although designed to reduce disparity in sentencing, is not inconsistent with the concept of separate judgments of conviction and sentences upon conviction by a jury for separate and different acts of sodomy, as in this case. Under that statute trial courts are provided with presentence reports and must state on the record the reasons for sentences imposed (ORS 144.790(1) and 137.120(2)). The sentences imposed by trial courts are for indeterminate periods of time, with the trial court stating only a maximum term to be served and, in his discretion, a minimum sentence up to one-half of that maximum sentence (ORS 137.120(2) and 144.110(1)). Appeals may be taken from sentences claimed to be excessive, and such sentences must be reviewed by the Court of Appeals (ORS 138.040 and 138.050).

Thus, if the sentences imposed are "disproportionate" in that they are excessive, they are subject to substantive sentence review. As previously stated, it was the contention of this defendant in his brief to the Court of Appeals that the sentences imposed in this

[445]

case should be reviewed as excessive sentences, not because there were three separate judgments of conviction and sentences, but because the sentences should have been made to run concurrently, rather than consecutively.

Moreover, and regardless of the sentences imposed by the courts, the legislature has provided by ORS 144.780 and 144.785 that it is the Board of Parole that determines the actual duration of imprisonment and in doing so is to seek to achieve "[p]unishment which is commensurate with the seriousness of the prisoner's conduct," after considering "aggravating or mitigating circumstances."

As conceded by the majority, nothing in this statutory plan prohibits multiple sentences when the same criminal statute is violated more than once in the same criminal episode. It is far more reasonable, in my opinion, to construe these statutes and the legislative intent which they embody as a legislative plan to eliminate "disproportionate" sentences by requiring presentence reports, statement of reasons for sentences, by providing for indeterminate sentences and substantive review of excessive sentences and by providing for a determination by the Parole Board of the actual time to be served, than to interpret these statutes as demonstrating a legislative intent to eliminate "disproportionate" sentences by prohibiting separate judgments of conviction and sentences in cases in which this court may be of the opinion that to do so would impose "disproportionate" sentences—in this case by prohibiting separate judgments of conviction and sentences for three different acts of sodomy in a single criminal episode, while permitting separate convictions and sentences for acts of rape and sodomy in the same criminal episode, as held by the majority.

Also, as previously stated, this question is not only one of importance, but one on which the State of Oregon has not had a fair opportunity to be heard, in my opinion, so as to entitle it to have this case set for

reargument before this court makes a decision by which it adopts a finding of such an incongruous legislative intent.

The majority says that separate convictions and sentences are proper for rape and sodomy, but not for two different acts of sodomy because the legislature "has chosen to differentiate" between rape and sodomy to make them "two distinct offenses requiring differing elements of proof." Under the terms of ORS 163.405 and 163.305, however, "differing elements of proof" are also required to establish the offense of oral sodomy, as "differentiated" from the separate offense of anal sodomy.

What the majority fails to recognize, in my opinion, is that this victim was held in a state of terror by this defendant for a period of 40 minutes, which, to a victim under such circumstances, is a long period of time. During that period, as previously stated, the defendant not only raped the victim, but before doing so committed both oral and anal sodomy upon her and after then raping her he again committed oral sodomy upon her.

As previously noted, the legislature, in 1975, defined the term "offense" as "conduct for which a sentence to a term of imprisonment or to a fine is provided by any law of this state." ORS 163.405 and 163.305(1) provides that both oral and anal sodomy are Class A felonies for which terms of imprisonment are provided by ORS 161.605.

Surely, any woman who has been subjected to such conduct by a man over a period of 40 minutes would believe that three separate offenses of sodomy have been perpetrated upon her for which the offender would be subject to separate convictions and separate sentences of imprisonment, and that for a court to hold that such a defendant can be convicted and sentenced for only one of the three acts of sodomy would be the

[447]

ultimate in male chauvinism. If, in such a case, sentences for the three acts of sodomy are excessive, they are subject to substantive sentence review under the statutes recently adopted by the legislature.

It is difficult for me to believe that the Oregon legislature, including its many women members, could have intended otherwise. Yet the majority necessarily must hold that to impose more than one judgment of conviction and more than one sentence for the three separate and different acts of sodomy in such a case would be "disproportionate" and therefore contrary to the intent of the Oregon legislature. I cannot agree and would hope that in the near future the legislature will make clear its intention on this subject.

Finally, the almost identical question presented in this case was presented in *State v. Steele*, 33 Or App 491, 577 P2d 524 (1978). In that case, as in this case, defendant contended that his convictions for oral and anal sodomy in the first degree were improper on authority of *State v. Welch, supra.* That same contention was rejected by the Court of Appeals in an opinion by Schwab, C.J., as follows (at 499):

> "Nothing in the legislative history of ORS 163.405 indicates whether a merger is appropriate in the situation presented here. As *Welch* points out, there is no precise formula for determining legislative intent in situations such as this. It tells us, citing *Bell v. United States,* 349 US 81, 75 S Ct 620, 99 L Ed 905 (1955), that we read statutes 'with the saving grace of common sense.' 264 Or at 393. We do not believe that the convictions for oral and anal sodomy in the first degree merge as constituting but one crime. The victim was exposed to additional fear, humiliation and danger during the second sodomy. We see no reason why we should hold that a man who commits one sodomy may do so again and again to the same victim with impunity. * * * The defendant's two acts of sodomy constituted two separate crimes, separately punishable."

[448]

This court denied defendant's petition for review in *Steele,* and properly so. (285 Or 195). In my view, the opinion by Schwab, C.J., is a sound opinion and one in full accord with what I believe to have been the probable intention of the legislature in such cases.

For these reasons, I must respectfully dissent from the holding by the majority that it was error for the trial court to enter separate judgments of conviction and separate sentences for three separate offenses of sodomy committed by this defendant. I cannot agree with the holding by the majority that to do so was "disproportionate" to defendant's criminal responsibility for that criminal episode.

HOWELL, J., joined in this opinion.

PETERSON, J., joined in part and filed opinion.

**PETERSON, J.,** concurring in part; dissenting in part.

I, too, concur in the majority opinion in its holding that the trial court did not err in convicting and sentencing defendant separately for kidnapping, rape, and sodomy. I join with Justice Tongue in part II of his dissent. I do not agree with part I of his dissent.