Argued and submitted December 7, 1981, affirmed in part, reversed in part and remanded to trial court June 31, 1983

## STATE OF OREGON,
*Respondent on Review,*
*v.*
## KENNETH RICHARD LINTHWAITE,
*Petitioner on Review.*

(CA 18242, CA 18243, CA 18244, CA 18245,
CA 18246, CA 18247, SC 28017)

665 P2d 863

Thomas J. Crabtree, Deputy Public Defender, argued the cause for petitioner on review. With him on the brief was Gary D. Babcock, Public Defender, Salem. On the brief in the Court of Appeals was Dennis D. James, Grants Pass.

Thomas H. Denney, Assistant Attorney General, argued the cause for respondent on review. With him on the brief in the Court of Appeals were James M. Brown, Attorney General, John R. McCulloch, Jr., Solicitor General, and William F. Gary, Deputy Solicitor General, Salem.

LENT, C. J.

## LENT, C. J.

A poorly drafted statute and a confusing trial and appellate history leave this court with two issues to resolve. The first issue is whether ORS 166.220(1) prohibiting *attempted use* of a dangerous knife requires a victim in order for there to be a crime. That subsection provides:

> "Any person who attempts to use, or who with intent to use the same unlawfully against another, carries or possesses a dagger, dirk, dangerous knife, razor, stiletto, or any loaded pistol, revolver or other firearm, or any instrument or weapon of the kind commonly known as a blackjack, slung shot, billy, sandclub, sandbag, metal knuckles, nunchaku sticks, bomb or bombshell, or any other dangerous or deadly weapon or instrument, commits a Class C felony."

Second, if a victim is required, and if there are multiple convictions arising from the same act or transaction[1] of an attempt to use the knife against four victims, can the defendant be sentenced to more than one term of five years?[2] Those issues arise out of the following course of events.

On February 26, 1980, in a public park in Grants Pass, Oregon, defendant operated a motor vehicle so as nearly to collide with a parked car. There followed a confrontation between defendant and several members of the family who owned the car, and a bystander. Defendant produced a knife and brandished it threateningly at three family members and at the bystander. Defendant also kicked and damaged the parked car and smashed a camera belonging to a family member.

The state brought 17 charges against defendant, ranging from Attempted Assault in the First Degree to

---

[1] We use the term "same act or transaction" in the sense in which we did in *State v. Fitzgerald,* 267 Or 266, 273, 516 P2d 1280 (1973), where, in determining whether certain charges "for the same act or transaction" could be joined for trial, we held that

> "[T]he two charges arise out of the same act or transaction if they are so closely linked in time, place and circumstances that a complete account of one charge cannot be related without relating details of the other charge."

[2] Conduct prohibited by ORS 166.220(1) is stated to be a Class C felony, for which the maximum sentence is five years. ORS 161.605.

Reckless Driving.[3] He was tried on 14 charges and, through jury mistake, found guilty of 16 charges.[4] The indictments which charged the four respective violations of ORS 166.220(1) alleged that the defendant was guilty of the offense of "ATTEMPTING TO USE A DANGEROUS WEAPON" in that he did "unlawfully and knowingly attempt to use a dangerous knife or other dangerous or deadly weapon against" each of four persons. These four charges were the most serious of which defendant was convicted.

## THE NATURE OF THE CRIME

A day before the time set for sentencing, the defendant filed what he termed a "NOTICE OF MERGER," by which he informed the trial court that he intended to assert the legal argument that there should be but one sentence for all four convictions. On the day of sentencing he filed with the trial court a memorandum in which he argued that ORS 166.220(1) did not require that there be a victim as an object of the attempt prohibited by that statute. He asserted:

"The Defendant has been convicted of four counts of violating ORS 166.220. The Defendant submits that there has been but one criminal act and, therefore, there should only be

---

[3] The Court of Appeals noted the zeal of the prosecutor:

"One can only speculate what considerations passed through the mind of the prosecutor as he exercised his discretion in charging. During argument in this court, the state, while virtually conceding the district attorney had prosecuted with a vengeance, nevertheless explained multiple charges were justified because the prosecutor wanted to insure that various theories of the case were submitted for the jury's consideration. *See American Bar Association Standards for Criminal Justice: Standards Relating to the Prosecution Function, Standard 3.9, Discretion in the Charging Decision,* and subsequent commentary; *see also, State v. Clipston,* 3 Or App 313, 330, 473 P2d 682 (1970)."

*State v. Linthwaite,* 52 Or App 511, 514, 628 P2d 1250 (1981). The district attorney's charging decision has not been challenged in this respect, however, so that issue is not before us, but we note that there is a fine line between zeal and vindictiveness. *See, United States v. Goodwin,* 457 US 368, 102 S Ct 2485, 73 L Ed 2d 74 (1982); *North Carolina v. Pearce,* 395 US 711, 89 S Ct 2072, 23 L Ed 2d 656 (1969).

[4] The 17 charges brought against defendant were four counts of Attempted Assault in the First Degree, four counts of Attempting to Use a Dangerous Weapon, three counts of Menacing, two counts of Criminal Mischief in the second degree, and one count each of Reckless Driving, Harassment, Carrying a Concealed Weapon and Possession of a Controlled Substance. Petitioner was tried on all but the final three charges. Petitioner was found guilty of five counts of Recklessly Endangering, four counts of Attempting to Use a Dangerous Weapon, four counts of Menacing (two of which had never been charged against petitioner), two counts of Criminal Mischief II, and Reckless Driving.

one criminal sentence. The State has charged four counts of violations of ORS 166.220 because there were four separate victims; however,ORS 166.220 does not require that there be a victim to complete the elements of the crime. The crime is complete without a victim.

"The State cannot exact four separate sentences by naming four separate victims of a single act of carrying, possessing, or attempting to use a dangerous weapon. Therefore, the Court should find but one conviction for sentencing and merge all other counts into that one conviction."

He raised the same argument orally before the sentencing judge, but the judge rejected the argument and sentenced defendant to four terms of five years each to run consecutively.

Upon appeal to the Court of Appeals, defendant's pertinent assignment of error was in part as follows:

"The trial court erred in sentencing Defendant without allowing the merger of all four counts of Attempting to Use a Dangerous Weapon into one conviction and sentence * * *."

In his brief he argued:

"[H]e is charged with attempting to use a dangerous weapon. There is no victim necessary to the intent to commit this crime. Therefore, the act of attempting to use a dangerous weapon is unitary in nature. It cannot be divided according to the number of victims present at that time."

In both the trial court and the Court of Appeals, defendant was arguing that the *text of the statute* does not require that there be a victim of the attempt. Neither the majority nor dissenting opinion in the Court of Appeals directly addressed this argument. In holding that the "multiple sentences were authorized," the majority answered the argument only as follows:

"While Attempting to Use a Dangerous Weapon is classified among firearms offenses, ORS 166.180 et seq., rather than among assault and related offenses, ORS 163.160 et seq., there can be little doubt that each attempted use of a weapon against a different person is a separate offense. Had defendant been charged with violating ORS 166.220 in the other way that statute may be violated, i.e., by merely carrying a dangerous weapon with intent to use it but not in fact using or attempting to use it, there might be some merit to his contention that there is no victim involved in the crime and,

hence, only one offense was committed no matter how many persons he may have intended to injure. *See State v. Perkins, supra.* Here, defendant was charged in four counts with having attempted to use a weapon against four separate persons. The jury of necessity found that the weapon was specifically directed against each of those four persons. The entry of four convictions for Attempting to Use a Dangerous Weapon was therefore proper."

*State v. Linthwaite,* 52 Or App at 522. The opinion ignores the argument that the text of the statute may be read as not requiring an attempt to use a dangerous weapon *against a person;* the opinion *assumes* that the act prohibited by the statute is the attempt to use a dangerous weapon against a person.

The text of the statute does not permit one to move so quickly to the conclusion that a victim is required. Reducing the text of the statute by eliminating the list of weapons not relevant to this case produces the following:

"Any person who attempts to use, or who with intent to use the same unlawfully against another, carries or possesses a * * * dangerous knife * * * commits a Class C felony."

The text literally describes two different criminals:

(1) Any person who attempts to use a dangerous knife.

(2) Any person who carries or possesses a dangerous knife with intent to use the same unlawfully against another.

The second crime is complete if the actor carries or possesses the weapon with intent to use it unlawfully against another. The first crime, by the text, proscribes nothing more than an attempt to use the weapon. The text does not require that the attempted use be unlawful, or that the attempted use be against a person or property, or even that there be an attempt to use the knife as a weapon. The text would make one guilty of a Class C felony if he attempts to use a dangerous or deadly weapon as a paperweight, or a dangerous knife to cut a roast, for example.

The defendant has consistently urged that since the text of the statute does not require that the attempted use be against a person, he can only be guilty of one crime by threateningly brandishing the knife, no matter how many

people might be present. Under a literal reading of the text of the statute his position has merit. The answer of the Court of Appeals seems to be that *because the prosecutor charged* that defendant did attempt to use the knife against each of four persons, and the jury found accordingly, the definition of the crime was somehow changed. That is to miss the mark. The first order of business is to determine whether the statute is to be construed so as to require that there be a person who is the object of the attempted use as an element of the crime.

The statute was enacted as Oregon Laws 1917, chapter 377, section 7. The title[5] of chapter 377 was as follows:

"Prohibiting the manufacture, sale, possession, carrying, or use of any blackjack, slungshot, billy, sandclub, sandbag, metal knuckles, dirk, dagger or stiletto, and regulating the carrying and sale of certain firearms, and defining the duties of certain executive officers, and providing penalties for violation of the provisions of this Act."

ORS 166.220, in pertinent part, does not differ from the statute as enacted in 1917.

■    The section was codified in 1920 as O.L. § 9687 and in 1930 as O.C. 1930, § 72-113. Neither code compiler described the section as referring to an attempted use. Each compiler, by the bold face heading to the code section, opined that the section was concerned with the prohibition of carrying or possessing a dangerous weapon with the intent to use it.[6] Of course, the bold face heading is only the opinion of the code compiler as to the meaning of the statute; it is not part of the statute. Perhaps the compilers did not mention the "attempt" aspect because they were not sure as to the implications of the statute in that respect. Experience teaches, however, that crimes described in various sections of the code come to be popularly known and used in accusatory instruments by the bold face used by the compilers.

---

[5] In 1917 Article IV, section 20, of the Oregon Constitution provided:

"Every act shall embrace but one subject, and matters properly connected therewith, which subject shall be expressed in the title. * * *"

[6] In O.L. § 9687, the compiler used the bold face heading: "Carrying Dangerous Weapon With Intent to Use Unlawfully a Felony—Effect of Possession as Evidence—Penalties." The compiler of the 1930 Code employed the following bold face: "Dangerous weapon—Carrying with intent—Possession as evidence—Penalties."

In 1940 the compiler of Oregon statutes ventured into the murky waters by giving the section a bold face description that recognized the attempt aspect: "Attempt to use slugging, stabbing, or dangerous weapon: Carrying or possessing with intent to use: Possession as evidence of intent: Penalty." OCLA § 25-208.

Although several cases have reached the appellate courts of this state in which a prosecutor has accused a defendant of carrying a dangerous or deadly weapon with the intent to use it unlawfully against another, we have found no case, other than that at bar, in which a prosecutor has charged a violation of the attempt proscription contained in ORS 166.220(1). There has been no previous opportunity directly to address the issue whether there must be an object of the attempt to use the weapon and whether the attempted use would be an unlawful one.[7]

In construing legislation, we attempt to ascertain the intention of the legislature. A review of chapter 377 of Oregon Laws 1917, from which ORS 166.220(1) is derived, demonstrates that the legislature was concerned with the prohibition of the manufacture, possession and unlawful use of weapons. Section 7 of chapter 377 contained not only what is now ORS 166.220(1), but additional provisions:

"Section 7. Any person who attempts to use, or who with intent to use the same unlawfully against another, carries or possesses a dagger, dirk, dangerous knife, razor, stiletto, or any loaded pistol, revolver or other firearm, or any instrument or weapon of the kind commonly known as a blackjack, slungshot, billy, sandclub, sandbag, metal knuckles, bomb or bombshell, or any other dangerous or deadly weapon or instrument, is guilty of a felony. The carrying or possession of any of the weapons specified in this section by any person while committing, or attempting or threatening to commit a felony, or a breach of the peace, or any act of violence against the person or property of another, shall be presumptive evidence of carrying or possessing such weapon with intent to use the same in violation of this section.

---

[7] We must assume that the legislature did not intend to proscribe the attempt of a lawful use, such as a physician attempting to perform emergency surgery on a hunting companion in the wilderness.

"Any person who violates the provisions of this section shall be deemed guilty of a felony, and upon conviction thereof shall be punished by a fine of not less than $50.00 nor more than $500.00, or by imprisonment in the county jail for not less than one month nor more than six months, or by imprisonment in the penitentiary for not exceeding five years."

The second sentence of the first paragraph is now codified as ORS 166.220(2). Sections 1, 2 and 3 of chapter 377 made it a misdemeanor to carry, possess or manufacture the kind of weapons with which the chapter was concerned. The legislature made violation of section 7 a felony, presumably because the conduct there proscribed was believed to be more blameworthy than the mere carrying or possessing the weapon. The second sentence of the first paragraph makes it clear that carrying or possessing the weapon in described circumstances, including attempted violent use against another person was a matter of concern to the legislature and gave rise to a presumption[8] of unlawful intent to use.

■ ■    If the text of ORS 166.220(1) is read literally, an attempt to use the weapon does not require a victim for there to be a crime. We believe that when chapter 377 is considered as a whole, however, the legislature did intend that there be a victim for there to be a crime of attempted use of the weapon. The construction for which defendant here contends is not reasonable in the circumstances; it might well be considered to produce an absurd result by making crimes of the innocent uses of the weapon in the examples above given. The court should not construe a statute so as to ascribe to the legislature the intent to produce an unreasonable or absurd result. *See, e.g., Pacific P. & L. v. Tax Com.,* 249 Or 103, 110, 437 P2d 473 (1968).

■    We construe ORS 166.220(1) to describe two criminals:

(1)   Any person who attempts to use a dangerous knife unlawfully against another.

---

[8] The stated presumption would now have only the force of a permitted inference. Oregon Evidence Code, Rule 309.

(2)  Any person who carries or possesses a dangerous knife with intent to use the same unlawfully against another.

Defendant here was charged, tried and found guilty of attempting to use his dangerous knife against four separate victims.

## PERMISSIBILITY OF MULTIPLE SENTENCES

As noted above at footnote 4, defendant was found guilty of 16 counts. The matter of sentencing on each was before the trial court at one time. As also noted above, the defendant filed a document entitled "NOTICE OF MER-GER," in which he asserted in general terms his intention to raise the issue of merger as to

> "the convictions for five convictions of recklessly endangering ORS 163.195 and four convictions of menacing ORS 163.190 and the four convictions for attempting to use a dangerous weapon ORS 166.220(1)."

As further noted above, defendant presented a memorandum of law to the trial court, in which the defendant urged that the crimes of recklessly endangering with respect to each victim must be merged with the conviction for menacing as to each of those victims. He further stated:

> "The Defendant also raises the issue of merger with regard to the four felony violations of ORS 166.220(1)(2)."

The entire text, except for a case citation, of his argument on this last point has already been set forth, *supra,* at 165-66. In summary, that argument was that the crime of attempting to use a dangerous knife did not require a victim and, conse-quently, the brandishing of the knife was only one crime no matter how many people may have been within striking distance and thereby be possible victims of actual use of the knife.

Defendant pursued that same line of argument in the colloquy among counsel and the trial court at the sentencing. His counsel stated:

> "[T]he Court must come down to ruling on whether or not, from the indictments, that one crime has been committed or four. Normally, the Court has ruled in various appellate court cases — I think *State v. Dillingham* for one — that if you have

more than one victim you can have more than one crime. However, in this case, a victim is not necessary for the culmination of the crime. All it has to state, has to prove, is that the defendant in this case used a dangerous weapon. And I think that was the language that they tried to use here: knowingly attempted to use. If that is so, they do not have to show that there was any victim at this time. All they have to show is that he attempted to use it. If that is true, then the use of various victims in this case would not in any way increase the number of crimes committed."

Counsel continued on to urge that had defendant been charged with the other crime encompassed by ORS 166.220(1), namely, carrying the weapon with intent to use it unlawfully against another, the number of crimes committed would be the same as the number of persons against whom the knife was intended to be used.

Later in the colloquy, counsel returned to this theme:

"And I think under those circumstances that the Court is bound to find under these four felony charges that there has only been one crime committed, and that is, use of a dangerous weapon. Now if they intended to say [in the indictment] that they (sic) carried or possessed the weapon with the intent to use it against another there could have been four victims and four different sentences. But, however, we feel, under these circumstances and under the elements setout (sic) by the Court, that there's but one crime committed here and that's use."

Later the trial court approached this point:

"Now I guess I still haven't fully comprehended why it is that if you try to do that on four different people you're not guilty of four different crimes."

Counsel answered that the crime of attempting to use a dangerous weapon did not require a victim. The trial court rejoined:

"But in this case, there was an act against each one of these people and I don't think that your argument is correct and I don't think there's a problem here with merger."

We believe it fair to say that defendant's position in the trial court was never that he had been convicted of four different crimes committed in the same act or transaction and, accordingly, that there should be "merger" for sentencing

purposes. Rather, he at all times asserted that there had been but one crime charged and established by the jury verdict.

The trial court proceeded to suspend imposition of sentence on all twelve misdemeanor counts and placed defendant on probation with respect to those crimes. The trial court sentenced defendant to five years imprisonment on each of the four counts of Attempting to Use a Dangerous Weapon.

On appeal, defendant's assignment of error with respect to sentencing embraced a broader theme, but it must be kept in mind that defendant was raising "merger" issues other than that with which we are here concerned. Although a part of the assignment was set forth, *supra,* we here quote the full assignment:

> "The trial court erred in sentencing the Defendant without allowing the merger of all four counts of Attempting to Use a Dangerous Weapon into one conviction and sentence and refusing to merge each conviction and sentence for Menacing with (sic) there was a corresponding conviction for Recklessly Endangering."

He further hinted at an expanded attack on his multiple sentences by the wording of his question presented on appeal:[9]

> "Should merger of convictions apply in the sentencing of the Defendant when he is charged with four counts of attempting to use a dangerous weapon in which a single continuous act is described? Should the trial court have denied merger of the convictions for Menacing and Recklessly Endangering since they arose out of the same act?"

In his summary of argument, pursuant to item (7) of Rule 7.17, Rules of Appellate Procedure, defendant suggested an attack broader than that made in the trial court:

> "The trial court lacked the power to impose more than one conviction and sentence for the Attempting to Use a Dangerous Weapon since there was only one act in one place at one time."[10]

---

[9] See item (6) of Rule 7.17, Rules of Appellate Procedure.

[10] Multiple convictions and multiple sentencing for multiple convictions present separate issues. This in part depends upon what is meant by "conviction." Certainly the prosecutor may charge several crimes, all of which may be presented to the jury and guilty verdicts obtained thereupon. The matter of sentencing upon the multiple findings of guilty presents a different question. *State v. Garcia,* 288 Or 413, 425, 605 P2d 671 (1980).

In arguing this assignment of error in his brief in the Court of Appeals, the defendant began by asserting that "merger" should be allowed when there is a "single course of conduct during the same time period and at the same place, with the same intent." He then alluded to *State v. Cloutier*, 286 Or 579, 596 P2d 1278 (1979), which he had cited to the trial court only in connection with his claim that the convictions of Recklessly Endangering should merge with the convictions of Menacing for the purposes of sentencing. When he particularized his argument in that brief, however, defendant returned to the only issue he had raised in the trial court, namely, that he had *committed but one prohibited act* and, accordingly, that there was only one crime. He said:

> "The question presented to this Court is whether the legislature intended to punish one act of Attempting to use a Dangerous Weapon with cumulative penalties. In *State v. Cummings*, 33 Or App [265], 576 P2d [36] (1978), this Court stated that the material elements of the offense of Attempting to use a Dangerous Weapon were (1) attempting to use a dangerous weapon; or (2) carrying or possessing a dangerous weapon; or (3) with the intent to use it against another. In the case of Kenneth Linthwaite, he is charged with attempting to use a dangerous weapon. There is *no victim necessary* to the intent to commit this crime. Therefore, *the act* of attempting to use a dangerous weapon *is unitary* in nature. It *cannot be divided* according to the number of victims present at that time." (Emphasis added)

**5, 6.** The Court of Appeals quite correctly held first that the convictions for Menacing and Recklessly Endangering "merged" for the purposes of sentencing with the corresponding conviction for Attempting To Use a Dangerous Weapon as against each victim.[11] Faced with the defendant's either ingenuous or ingenious attempt to suggest a different bar to multiple sentences than that presented to the trial court, the Court of Appeals appears to have been lured into addressing a claim of error, the basis for which had not been advanced to

---

[11] As we have explained in *State v. Cloutier*, 286 Or 579, 586, 596 P2d 1278 (1979), the term "merger * * * is best reserved for the narrow situation when the completion of one offense necessarily includes commission of acts sufficient to constitute violation of another statute" is not correctly applied to determining whether criminal conduct should result in single or cumulative sentencing.

The Court of Appeals also correctly reversed the two convictions for Menacing which had never been charged.

the trial court. The case was addressed as if the issue were sentencing power for conviction of a crime involving multiple victims in a single criminal episode as that term was used by this court in *State v. Cloutier, supra,* and *State v. Garcia,* 288 Or 413, 605 P2d 671 (1980). That issue was not fairly presented to the Court of Appeals as an error-correcting court.

■■ As the court having jurisdiction of the appeal in this case, the Court of Appeals functioned as an error-correcting court. Generally speaking, that court is not required to consider claims of error not presented to the trial court. The rationale for that proposition is that unless the matter has been properly brought to the trial court's attention in making its ruling, there is no error to correct. In other words, the appellate court does not generally take note of error not preserved in the record in the trial court. Except for the *power* of the appellate court to take notice of errors of law apparent on the face of the record under Rule 7.19 of the Rules of Appellate Procedure, parties upon appeal are restricted to claims presented to the trial court. *Compare, Lambert Pharmacal Co. v. Roberts Bros.,* 192 Or 23, 28, 233 P2d 258 (1951).

The issue raised by this defendant in the trial court was never anything but a claim that the portion of ORS 166.220(1) making one guilty of a crime for an attempt did not require a victim, and that the prosecutor could not, by alleging that there were four victims, convert one criminal act of brandishing a knife in the presence of those four people into four separate crimes. As we have held in the first part of this opinion, the defendant was wrong; the crime is not complete without a victim. The defendant's argument made to the trial court for a single sentence falls with the rejection of his theory that "The crime is complete without a victim," rephrased in his brief in the Court of Appeals that the proscribed act is "unitary in nature" and "cannot be divided according to the number of victims present at that time."

In allowing the defendant's petition for review, this court also succumbed to the siren's song. The petition for review prepared by counsel other than defendant's counsel in the trial court and Court of Appeals[12] does not even mention

---

[12] This statement is not intended as criticism of counsel at either level of these proceedings. We note the difference in representation only as partial explanation of

the theory presented to the trial court; rather, it was concerned with the issue upon which the Court of Appeals divided and, as did the Court of Appeals, implores this court to address that issue and to clarify the law pertaining thereto.[13]

Although it is arguable that we may be presenting only dictum upon the issue addressed by the Court of Appeals, we believe that having allowed the petition for review, we should proceed to resolution of the issue despite the confusing history to which we alluded at the outset hereof.

Having determined that an attempted use proscribed by ORS 166.220(1) requires a victim and having re-established that a defendant may be charged with and found guilty of separate charges for each victim, we now turn to whether these separate convictions should result in a single sentence or multiple sentences.

We have not dealt with this question before. *State v. Gratz,* 254 Or 474, 461 P2d 829 (1969), and *State v. Gilbert,* 281 Or 101, 574 P2d 313 (1978), hold that a defendant may face multiple convictions but do not mandate that a defendant be sentenced separately for each conviction. As we said in *Gilbert,*

> "We are not holding that the defendant, if found guilty of several indictments, can be ordered to serve multiple sentences; that is a separate problem and it is not before [the court in *Gilbert*]."

*State v. Gilbert,* 281 Or at 110.

We dealt with multiple sentencing in *State v. Cloutier, supra.* In *Cloutier* a single defendant in a single

---

how the defendant's theory concerning multiple sentencing in the trial court gradually took on a different nature as the case proceeded through the appellate and review processes.

[13] The petition for review may be read as presenting yet another subtle shift in attack on the multiple sentencing, for the petition sums up by drawing attention to the rule of lenity expressed in *Bell v. United States,* 349 US 81, 83-84, 75 S Ct 620, 99 L Ed 905 (1955), cited with approval by this court in *State v. Welch,* 264 Or 388, 393, 505 P2d 910 (1973), and then arguing that the rule of lenity

"should be applied in the present case. This court should therefore 'merge' the four attempting to use a dangerous weapon offenses into a single conviction and order that all sentences imposed from this criminal episode be imposed concurrently."

criminal episode against a single victim violated several statutory provisions. We held that Cloutier should have been sentenced singly for his one criminal episode.

We have also considered the sentencing question in *State v. Garcia,* 288 Or 413, 605 P2d 671 (1980). *Garcia* involved kidnapping, rape and sodomy charges. A jury found the defendant guilty, and he was sentenced to five consecutive 20-year sentences for the kidnapping, rape and three sodomy convictions. Defendant argued for a single sentence on the sex crimes and for "merger" of the kidnapping sentence into the sex offense sentence.

In *Cloutier,* we had said to look first for legislative directives and intent. In *Garcia,* we found the legislature had said there may be a separate conviction and a separate sentence for a kidnapping committed to further another crime when the kidnapping was not considered incidental to the other crime. Kidnapping can be found to be not incidental when the defendant intended to interfere substantially with the victim's personal liberty. As presented to us in *Garcia,* the defendant had interfered substantially with the victim's personal liberty. The kidnapping was not merely incidental to another crime. Thus, following the legislature's directive, the defendant's separate sentences for the kidnapping and the sex offenses were upheld.

In contrast to the kidnapping statute, the legislature had provided no guidance concerning cumulative sentences on the three sodomy charges. It was clear to us in *Garcia* that separate counts of sodomy were appropriate at the prosecutorial stage, because the prosecution might be able to prove one form of deviate conduct but not the other. Still, the power to charge multiple counts does not automatically lead to imposition of multiple sentences. Where the legislature has prescribed a course, or where the legislature's intent can be discerned, this court follows that direction so long as it stays within constitutional bounds. For example, in *State v. Welch,* 264 Or 388, 505 P2d 910 (1973), we held that absent a showing of contrary legislative intent, the publishing of two forged checks constituted one offense, and thus only one sentence was proper. We followed this approach with respect to the sodomy charges in *Garcia,* as well. In *Garcia,* we held that while it was proper for the state to charge and convict Garcia for perpetration of three forms of sodomy in one criminal

episode, only one sentence for the crime was proper. In *Garcia* and in *Welch* we were persuaded by the United States Supreme Court's analysis in *Bell v. United States,* 349 US 81, 75 S Ct 620, 99 L Ed 905 (1955). Defendant Bell had transported two women across state lines for immoral purposes in violation of the Mann Act. Bell was charged with and convicted of two counts of the crime. The Supreme Court, however, concluded that Bell should have been subjected to only one sentence since he had committed only one act, albeit against two people.

We now turn to ORS 166.220(1), the statute in question. First, we conclude that the legislature has provided no direction within the text of the statute itself. Nor can we discern the legislature's intent from the statute's legislative history. This statute was first adopted in 1917 for the purpose of controlling the use of dangerous weapons. No legislative history relevant to this question has survived from that period.

The state argues that in adopting the former jeopardy statute, ORS 131.505(3), the legislature has expressed an intent to impose separate sentences for each victim. ORS 131.505(3) provides:

> "When the same conduct or criminal episode, though violating only one statutory provision, results in death, injury, loss or other consequences of two or more victims, and the result is an element of the offense defined, there are as many offenses as there are victims."

In adopting this statutory provision, the legislature has expressed a clear desire to create an offense for each victim, but, by its terms, the legislature has adopted this definition solely for the purposes of issues pertaining to claims of former jeopardy.

In the context of the constitutional protection against double jeopardy, this scheme makes sense. Just as different proof problems existed for each deviate act in *Garcia,* they exist also for each victim in this case. The constitutional protection against double jeopardy prevents a defendant from being subjected to more than one trial for the same offense.[14]

---

[14] "No person shall be put in jeopardy twice for the same offence * * *."

Or Const Art I, § 12.

Therefore, separate charges are necessary to ensure successful prosecution for the crimes actually committed without violating a defendant's constitutional rights.

██ ██ ORS 131.505 does not, however, deal with sentencing. Sentencing not only must be appropriate for the crime, but it must be appropriate for the criminal, as well. *Cf.* ORS 144.780. As we said in *Cloutier:*

> "* * * sentencing of the so-called 'multiple offender' must start from the recognition that, though a defendant's conduct may have constituted multiple offenses, the sentencing phase concerns the disposition of a single, not a multiple, human being."

Sentencing of a convicted criminal is not to be controlled by procedural rules designed for the charging phase of a prosecution, the trial thereof, or the consequences for claim of former jeopardy. We hold that ORS 131.505(3) does not mandate a separate sentence for each conviction that stems from the same criminal episode.

In *Cloutier* we discussed the sentencing phase of a criminal proceeding at length. *See Cloutier,* 286 Or at 590-596. In that discussion we concluded that it was the legislature's efforts to provide rationality and proportionality to the sentencing of criminals within Oregon's penal scheme that the courts must seek to apply in sentencing a criminal found guilty of several factually related offenses and not the definitions for the purposes of charge and trial found within ORS 131.505.

In *Cloutier* we held that ORS 131.505(2), which, for former jeopardy purposes, creates a separate offense for each statutory provision violated, did not show a legislative intent to sentence separately for each offense. Today we hold that ORS 131.505(3), which, for former jeopardy purposes, creates a separate offense for each victim of a criminal episode, does not indicate legislative intent that punishment be by way of multiple sentencing. We therefore apply the principle of lenity adopted in *State v. Welch, supra.*

The decision of the Court of Appeals is affirmed except for its holding that multiple sentences were authorized

for each count of Attempting to Use a Dangerous Weapon. The case is remanded to the trial court for resentencing in accordance with the Court of Appeals'. decision and this partial reversal.