GARRETT, J., dissenting.
Defendant was convicted of 30 counts against a total of 27 victims. To be consistent with ORS 161.067(2), his judgment of conviction should therefore include at least 27 counts. But, under the majority's erroneous construction **298 of that statute, defendant's 27 convictions for identity theft will merge into his conviction for aggravated identity theft-an offense that, by its terms and as pleaded in this case, requires only "10 or more" victims. Thus, defendant's judgment of conviction will fail to accurately reflect the extent of his criminal activity, a result that is contrary to the text and manifest purpose of the merger statute. Accordingly, I respectfully dissent.
The merger issue in this case, like all merger questions since 1985, is controlled by ORS 161.067. The majority, however, begins instead with the aggravated identity theft statute, ORS 165.803, suggesting that the legislative history of that statute resolves the merger question here in defendant's favor. See State v. Gensitskiy , 365 Or. 263, 281, 446 P.3d 26, 36 (2019). That suggestion is flawed and threatens to confuse an already "vexing" area of criminal law. See State v. Cloutier , 286 Or. 579, 582-83, 596 P.2d 1278 (1979). Because the majority places ORS 165.803 at the front and center of its analysis, I begin there as well.
The first problem is that, by relying on the legislative history of the aggravated identity theft statute to infer what the enacting legislature might have had in mind regarding merger, the majority appears to revive-without expressly saying that it is doing so-the analytical framework for merger that *46 was superseded more than three decades ago.
Even though the legislature that passed ORS 165.803 never discussed merger, the majority reasons that the legislature's stated goal of enabling more efficient identity-theft prosecutions reflects an implicit intent that convictions for the lesser offense of identity theft would merge into the greater offense of aggravated identity theft. See Gensitskiy , 365 Or. at 281, 446 P.3d at 36. The majority's reasoning evokes the pre-1985 framework for analyzing merger issues, in which courts broadly examined, first, any "legislative directives" that may exist; second, the "intentions and policies that may plausibly be attributed to the legislature in the light of legislative history, of the overall statutory framework, and of constitutional principles"; and, finally, double jeopardy principles and other constitutional limitations that may apply. Cloutier , 286 Or. at 585, 596 P.2d 1278.
**299 However, Oregon courts abandoned the Cloutier framework when it was superseded by both former ORS 161.062 (1985), repealed by Or. Laws 1999, ch 136, § 1, and, now, ORS 161.067. We explained this in State v. Crotsley , 308 Or. 272, 276-78, 779 P.2d 600 (1989) :
"Prior to enactment of [former ] ORS 161.062 [ (1985) ], and in the absence of clear statutory guidance, the courts fashioned judicial rules to address circumstances in which a single criminal episode provides grounds for multiple convictions and sentences. These include situations where a single criminal episode involves violation of more than one statute; where a single criminal episode involves multiple crimes against the same victim; and where a single criminal episode involves multiple victims. Where no clear legislative intent could be discerned concerning multiple convictions and sentencing for crimes committed during a single criminal episode, this court had to speculate whether the legislature would have expected an offender to be sentenced for more than the most serious felony. See [ Cloutier , 286 Or. 579, 596 P.2d 1278 ].
"After several attempts to enact legislation that would address judicial concerns about the lack of statutory guidance in this complex area, in 1985 the legislature enacted [former ] ORS 161.062 [ (1985) ] ***. The proponents of [former ] ORS 161.062 [ (1985) ] clearly intended that criminal records accurately reflect all crimes actually committed and that a person who commits multiple crimes by the same conduct or during the same criminal episode should have a criminal record reflecting each crime committed rather than only a single conviction which would not accurately portray the nature and extent of that person's conduct.
"The legislative history and text of [former] ORS 161.062 [(1985) ] could not be more clear in rejecting earlier case law requiring consolidation of multiple convictions and sentences arising from the same criminal episode . For that reason, defendant's reliance on cases decided prior to the enactment of [former ] ORS 161.062 in 1985 is misplaced. In those cases, absence of clear statutory guidance required us to fashion rules that were more properly the subject of legislation, and statutory ambiguities were construed in favor of criminal defendants. The legislature has now unambiguously embraced the policy advocated by the proponents of [former] ORS 161.062 [(1985) ]. Therefore, to the **300 extent that our case law is inconsistent with [former] ORS 161.062 [(1985) ], that statute controls and earlier case law is superseded ."
(Emphases added.)
Since the enactment of former ORS 161.062 (1985) and ORS 161.067, this court has never applied the old Cloutier framework and has instead treated those merger statutes-sometimes referred to as the "anti-merger" statutes-as the sole source of authority regarding merger. Without explanation, the majority departs from that practice, implying a shift in this court's jurisprudence that will cause confusion and contravene the voters' and legislature's intent in enacting statutes that were meant to replace the "judicial practice of merging criminal convictions." Testimony, Senate Committee on Judiciary, SB 257, June 4, 1985 (statement of Deputy Attorney General William Gary) (internal quotation marks omitted).
*47 The second problem with the majority's reasoning is that, even assuming that the legislative history of the aggravated identity theft statute, ORS 165.803, had anything to do with the merger question, the majority misreads that history.
As the majority points out, the legislative history of ORS 165.803 reflects an intention "to enable the state to aggregate multiple identity thefts into a single aggravated identity theft, resulting in smaller indictments, more efficient prosecutions, and more severe penalties." Gensitskiy , 365 Or. at 275, 446 P.3d at 33. However, the legislative history should be read for what it says, and nothing more. The goal of providing prosecutors an additional tool for efficiently bringing identity theft cases does not imply an intention to limit any tools that already existed, and it certainly says nothing about what the legislature intended on the subject of merger. The legislature surely expected that, for a single criminal episode of identity theft involving many victims, prosecutors for reasons of convenience might take the opportunity to file a single charge of aggravated identity theft in lieu of large numbers of counts of the lesser offense. But nothing in the legislative history suggests that the legislature meant to deprive prosecutors of the flexibility to charge both **301 crimes. And, where a prosecutor makes that decision and obtains multiple convictions, the legislative history provides us with no basis for saying that those convictions should merge. In short, the majority's conclusion that "the legislature intended that a conviction for aggravated identity theft would be in lieu of convictions for the identity thefts on which it was based," id. at 281, 446 P.3d at 36, is only partially correct-the legislature may have anticipated that prosecutors would make that charging decision, but the legislature did not require it.
The only relevant question in this merger case is whether the "anti-merger" statute , ORS 161.067, requires defendant's crimes against 27 victims to remain separately punishable. It does.
Oregon's "anti-merger" law, ORS 161.067, was enacted with a very clear purpose in mind. Prior to enactment, it was often unclear how courts entering judgments of conviction should treat multiple crimes arising from a single criminal episode. State v. Nix , 355 Or. 777, 784-85, 334 P.3d 437 (2014), vac'd on other grounds , 356 Or. 768, 345 P.3d 416 (2015) ; see State v. White , 341 Or. 624, 630-31, 147 P.3d 313 (2006) (explaining history of ORS 161.067 ). As noted above, in the absence of legislative guidance, courts developed their own approach that involved individualized inquiries into the legislative intent behind the criminal statutes at issue in each case. See Cloutier , 286 Or. at 585, 596 P.2d 1278 (courts first examine "legislative directives" that may exist, then "the intentions and policies that may plausibly be attributed to the legislature in the light of legislative history, of the overall statutory framework, and of constitutional principles," and, finally, constitutional double jeopardy principles and other constitutional limitations that may apply). Under that framework, this court issued several decisions requiring the merger of multiple convictions arising from the same criminal episode. See Cloutier , 286 Or. 579, 596 P.2d 1278 (merger required despite violation of multiple statutory provisions); State v. Linthwaite , 295 Or. 162, 665 P.2d 863 (1983) (multiple victims); State v. Garcia , 288 Or. 413, 605 P.2d 671 (1980) (multiple violations against same victim).
In the wake of those decisions, the legislature and the voters both proposed legislation that would require **302 courts to impose separate punishments for crimes committed during a single criminal episode. The first such legislation to pass was former ORS 161.062 (1985), which was enacted by the legislature in 1985. Or. Laws 1985, ch 722, § 4. Former ORS 161.062 (1985) originated as Senate Bill (SB) 257 (1985); that bill was generally intended to:
"address *** problems which have caused criminal law practitioners and the courts consternation for quite some time *** [including] how many judgments of conviction a court may enter when a criminal defendant has, during an episode, violated several statutes, injured several victims or violated the same statute against the same victim several times."
Staff Measure Analysis, Senate Committee on Judiciary, SB 257, June 4, 1985. Deputy *48 Attorney General William Gary explained to the Senate Judiciary Committee that SB 257:
"would clearly and unequivocally express a legislative policy judgment that crimes committed in a single criminal episode should be recorded separately on a person's criminal record . * * * The history of the offender's criminal conduct is literally rewritten by the Court by 'merging' separate criminal acts into one big crime. SB 257 would halt this practice and ensure that a person's criminal record accurately reflects the number of crimes of which he or she has been judged guilty .
"The judicial practice of 'merging' criminal convictions has developed because of an absence of legislative guidance as to when a law violator should be subject to multiple punishments for separate criminal violations committed during a single criminal episode. SB 257 properly recognizes that the number of convictions that should be entered is (or should be) a wholly separate question from the appropriate sentence to be imposed for the entire course of conduct."
Testimony, Senate Committee on Judiciary, SB 257, June 4, 1985 (statement of Deputy Attorney General William Gary) (emphases added). Accordingly, SB 257 set out three subsections describing the circumstances-corresponding to the respective situations in Cloutier (violation of separate statutes), Linthwaite (multiple victims), and Garcia (repeated statutory violations against single victim)-in which a trial court would be required to impose separate punishments.
**303 This court has stated that the "legislative history and text of ORS 161.062 could not be more clear in rejecting earlier case law requiring consolidation of multiple convictions and sentences arising from the same criminal episode." Crotsley , 308 Or. at 277, 779 P.2d 600. SB 257 was amended before it was passed and codified in former ORS 161.062 (1985).[1]
Meanwhile, the voters proposed an initiative, Ballot Measure 10 (1986), that, among other things, would "[l]imit[ ] sentence merger for multiple crimes" and "[s]lightly expand[ ] circumstances under which a person may be convicted of separate offenses and may be given consecutive sentences." Official Voters' Pamphlet, General Election, Nov. 4, 1986, 49, 52. Measure 10, also known as the 1986 "Crime Victims' Bill of Rights," contained an "anti-merger" law that originated from a common source of SB 257, see Crotsley , 308 Or. at 276 n. 3, 779 P.2d 600, and was thus identical to the unamended version of SB 257.[2] Measure 10 passed and was codified in its original wording in ORS 161.067.
Although the legislative history of Measure 10 contains only limited evidence speaking directly to the voters' likely understanding of the "anti-merger" provision, this court has reasoned that the common source, wording, and timing of Measure 10 and former ORS 161.062 (1985) reflect a common general purpose of both laws. See White , 341 Or. at 630-31, 147 P.3d 313 (citing interconnected background of both laws in interpreting the general intent of ORS 161.067 ); Crotsley , 308 Or. at 276 n. 3, 779 P.2d 600 (explaining that ORS 161.067 and former ORS 161.062 (1985) have an "intertwined and convoluted relationship" as "[b]oth statutes began as identically worded proposals" that "apparently derived from a common source" and were, in effect, "enacted twice"). Thus, this court has concluded from certain legislative history of former ORS 161.062 (1985) that ORS 161.067 likewise "appears to reject earlier decisions of this court requiring consolidation of multiple convictions and sentences arising from the same **304 criminal episode" and, instead, "reflects a legislative intent that 'a person who commits multiple crimes by the same conduct or during the same criminal episode should have a criminal record reflecting each crime committed .' " *49 White , 341 Or. at 630, 147 P.3d 313 (quoting Crotsley , 308 Or. at 276-77, 779 P.2d 600 (emphasis added)).
ORS 161.067 identifies three situations in which multiple offenses committed as a result of the "same conduct or criminal episode" are "separately punishable"-that is, the convictions must not merge. That statute provides, in part:
"(1) When the same conduct or criminal episode violates two or more statutory provisions and each provision requires proof of an element that the others do not, there are as many separately punishable offenses as there are separate statutory violations.
"(2) When the same conduct or criminal episode, though violating only one statutory provision involves two or more victims, there are as many separately punishable offenses as there are victims. ***
"(3) When the same conduct or criminal episode violates only one statutory provision and involves only one victim, but nevertheless involves repeated violations of the same statutory provision against the same victim, there are as many separately punishable offenses as there are violations, except that each violation, to be separately punishable under this subsection, must be separated from other such violations by a sufficient pause in the defendant's criminal conduct to afford the defendant an opportunity to renounce the criminal intent."
Subsection (1) clearly sets out a basic principle that violations of multiple statutes are punished separately. The one exception is for those instances where the elements of one statutory violation are completely subsumed by the elements of another.
Subsection (2) sets out a different basic principle: where a defendant commits crimes against multiple victims , those crimes are punished separately.
Subsection (3) sets out a third basis for imposing separate convictions: repeated violations of the same statute **305 against one victim , where neither subsection (1) nor (2) would apply. Even there, the legislature intends separate punishment for each statutory violation that is separated from others by a "sufficient pause."
Accordingly, subsections (1), (2), and (3) collectively reject the judicial rules prescribed in Cloutier , Linthwaite , and Garcia , and instead reflect the policy that every crime against every victim is separately cognizable. See White , 341 Or. at 630, 147 P.3d 313 ( ORS 161.067 "reflects a legislative intent that 'a person who commits multiple crimes by the same conduct or during the same criminal episode should have a criminal record reflecting each crime committed.' " (Quoting Crotsley , 308 Or. at 276-77, 779 P.2d 600.)).
In this case, defendant was found guilty of 27 acts of identity theft against 27 victims in a single criminal episode. It strains neither the language of ORS 161.067(2) nor common sense to conclude that each victim's harm is "separately punishable," such that defendant should have 27 convictions entered against him. That conclusion is consistent with the purpose of ORS 161.067 that "each crime" should be reflected in a defendant's criminal record. See, e.g. , White , 341 Or. at 630, 147 P.3d 313.
The majority's construction of the statute, in contrast, will result in a judgment of conviction that fails to accurately reflect defendant's criminal history. The majority disagrees, asserting that a "conviction for an aggregate crime, like aggravated identity theft under ORS 165.803 (1)(d), accurately reflects a defendant's conduct because it is for a more serious crime and reflects all the victims of the component crimes." And the majority repeatedly states that defendant's conviction for aggravated identity theft here will fully reflect his criminal conduct. See Gensitskiy , 365 Or. at 266, 281, 294-95, 446 P.3d at 28-29, 36, 43-44. But that is wrong. Count 1 of defendant's indictment alleges that defendant committed aggravated identity theft by possessing "10 or more pieces of personal identification from 10 or more different persons." That part of the indictment tracks the wording of the aggravated identity theft statute, which applies to crimes involving "10 or more" victims. The state was not required to plead an exact number of victims, and it didn't. Thus, because Count 1 **306 could logically be based on conduct affecting 10, 11, or 12 victims, it fails on its terms to reflect *50 that defendant was convicted of crimes against 27 victims.[3]
The declared purpose of ORS 161.067 -ensuring that judgments of conviction "reflect[ ] each crime committed," White , 341 Or. at 630, 147 P.3d 313 (internal quotation marks omitted)-is not served by the majority's result. The question, therefore, is whether that result is nonetheless required by the wording of ORS 161.067. That question turns on the meaning of the phrase "though violating only one statutory provision" in subsection (2) of that statute. The majority interprets that clause as a limitation, such that crimes against multiple victims are separately punishable only when the criminal conduct violates a single statutory provision. On that theory, because defendant violated two statutes, subsection (2) does not apply. Because subsection (1) also does not preclude merger (because the offense of identity theft does not require proof of any element that is not also required by the offense of aggravated identity theft), the majority's analysis requires defendant's 27 convictions for identity theft to merge into his conviction for the greater offense of aggravated identity theft.
I agree that the word "though" in subsection (2) of ORS 161.067 is ambiguous on its face; "though" could be read to mean (as the majority concludes) "when and only when," or it could mean (as the state contends) "even if." See, e.g. , Webster's Third New Int'l Dictionary 2381 (unabridged ed 1976) (permitting either interpretation). Given that ambiguity, we look for clues to the meaning of "though" in the surrounding text and context, structure, purpose, and legislative history. See State v. Gaines , 346 Or. 160, 171-72, 206 P.3d 1042 (2009) (the goal in interpreting statutes is to discern the legislative intent, which is accomplished by examining the text in context and, if helpful, the legislative history).
**307 Those clues tell us that the "even if" interpretation is the correct one. For one, an "even if" interpretation makes sense in light of how subsection (2) is phrased relative to the other subsections of ORS 161.067. All three subsections use conditional phrases that provide that offenses are separately punishable "when" certain conditions exist. The conditional phrases in subsections (1) and (3) require that, for offenses in the same criminal episode to be separately punishable, all the conditions expressed between the terms "when" and "there" must exist. See ORS 161.067(1) ("When the same conduct or criminal episode violates two or more statutory provisions and each provision requires proof of an element that the others do not , there are as many separately punishable offenses as there are separate statutory violations." (Emphasis added.)); ORS 161.067(3) ("When the same conduct or criminal episode violates only one statutory provision and involves only one victim, but nevertheless involves repeated violations of the same statutory provision against the same victim , there are as many separately punishable offenses as there are violations[.]" (Emphasis added.)).
Subsection (2) is different, because its conditional phrase is interrupted by the phrase "though violating only one statutory provision." (Emphasis added.) As noted above, that phrase can be construed as either a mandatory condition ("while violating only one statutory provision"), thus operating like the other subsections, or an optional one ("even if violating only one statutory provision"), thus operating differently than other subsections. If the drafters had intended that phrase to be a mandatory condition, however, then subsection (2) might just as well be phrased the same as the other subsections, to say, "When the same conduct or criminal episode violates only one statutory provision and involves two or more victims." Because the drafters could have easily accomplished that result by simply tracking the structure of the other subsections and not using the word "though," the decision to use that term tends to show that the drafters intended *51 something else. See, e.g. , Baker v. Croslin , 359 Or. 147, 157-58, 376 P.3d 267 (2016) (alternative terms do not mean the same thing unless there is evidence to the contrary); Crystal Communications, Inc. v. Dept. of Rev. , 353 Or. 300, 311, 297 P.3d 1256 (2013) ("As a general **308 rule, we construe a statute in a manner that gives effect, if possible, to all its provisions.").
An examination of the origins of the phrasing of ORS 161.067 supports that conclusion. As noted earlier, both ORS 161.067 and former ORS 161.062 (1985) apparently originated from a common source-and that common source was likely Oregon's former jeopardy statute, ORS 131.505. Subsections (2) and (3) of that statute provide, similarly to ORS 161.067(1) and (2), that, "[w]hen the same conduct or criminal episode violates two or more statutory provisions, each such violation constitutes a separate and distinct offense," ORS 131.505(2), and, "[w]hen the same conduct or criminal episode, though violating only one statutory provision , results in death, injury, loss or other consequences of two or more victims, and the result is an element of the offense defined, there are as many offenses as there are victims," ORS 131.505(3) (emphasis added).
Although the use of the word "though" in ORS 131.505(3) is facially ambiguous for the same reasons as in ORS 161.067, the legislative history of ORS 131.505 indicates that "though" in subsection (3) of that statute likely meant "even if." When that statute was proposed to the legislature in 1972, the Criminal Law Revision Commission's commentary on ORS 131.505(2) and (3) explained that, while subsection (2) "makes conduct that violates two or more statutes a separate offense for each statute so violated," subsection (3) "makes a separate offense, also, for each victim who is injured or killed as a result of a single course of criminal conduct." Commentary to Criminal Law Revision Commission Proposed Oregon Criminal Procedure Code, Final Draft and Report § 26, 16 (Nov. 1972). There is no suggestion in that legislative history that the intention of making "a separate offense, also, for each victim" was qualified by how many statutes were violated. That tends to suggest that subsections (2) and (3) of ORS 131.505 provide independent, nonexclusive reasons why conduct committed in a single criminal episode may constitute separate offenses, such that "though" in subsection (3) must mean "even if." See id. (allowing for separate offenses "also" where there are multiple victims of a single course of criminal conduct). Accordingly, the same phrasing in the descendant of **309 ORS 131.505 at issue here, ORS 161.067, likely carries the same meaning.
Finally, the "even if" interpretation is most consistent with the purpose of the "anti-merger" statute, ORS 161.067. See State v. Guzek , 322 Or. 245, 265, 906 P.2d 272 (1995) ("In interpreting a statute enacted by initiative, the court's task is to discern the intent of the voters who passed the initiative."). The evident purpose of subsection (2) is to recognize and punish individual harms. With that in mind, why would the voters choose to do so only when a single statute is violated and not when multiple statutes are violated? The majority does not answer that question.
The majority's arguments against the natural, intuitive interpretation are not persuasive. The first is textual. The majority contends that, if we construe "though violating only one statutory provision" to mean "even if violating only one statutory provision," then the clause adds nothing to the statute. If the clause merely means that the number of statutory violations is irrelevant, the argument goes, then the statute would mean the same thing without the clause as it does with it.
That argument would have force if subsection (2) were a standalone provision. But it is not. Subsection (2), which is concerned with how many victims are harmed , immediately follows subsection (1), which is concerned with how many statutes are violated . In that light, it is understandable that the drafters would have added language in subsection (2) to clarify that the number of statutes violated is not relevant to that provision.
Defendant and the majority also place heavy reliance on the legislative history of former ORS 161.062 (1985). The contention is that former ORS 161.062 (1985), to which ORS 161.067 is related, supposedly made it clear that subsection (2) was to apply exclusively *52 in situations where a single statute was violated, so ORS 161.067(2) should be applied that way too. It is true that the earlier "anti-merger" statute had a subsection (2) that used the phrase "violates only one statutory provision" to describe the situations when that subsection would apply. However, that observation does not lead to the conclusion that the majority draws. **310 Former ORS 161.062(2) (1985) provided, in part:
"*** [W]hen the same conduct or criminal episode violates only one statutory provision , but involves two or more victims, there are as many separately punishable offenses as there are victims."
(Emphasis added.)
Although this court has relied on the earlier measure to discern the general purpose of ORS 161.067, where the wording of those measures is identical, this court has not done so where the wording of ORS 161.067 and the earlier measure is different. Cf. Nix , 355 Or. at 786, 334 P.3d 437 ("Ordinarily, when legislation has been essentially reenacted with no material change , we assume-in the absence of evidence to the contrary-that no change in meaning was intended." (Emphasis added.)).[4] Accordingly, I am less inclined than the majority to disregard the potentially material differences in wording between the earlier provisions and ORS 161.067(2) when examining the nuances of the text of ORS 161.067(2). Former ORS 161.062 (1985) did not use the word "though," and was enacted not by the voters, but by the legislature. Interestingly, although former ORS 161.062 (1985) contained the phrase "though violating only one statutory provision" when originally drafted, the legislature (for unknown reasons) deleted that phrase before enactment and changed subsection (2) to read, "when the same conduct or criminal episode violates only one statutory provision , but involves two or more victims ***." The legislature's deliberate removal of the word "though" may reflect an intention that cannot be readily ascribed to the voters, who enacted different wording.
**311 In all events, none of the wording of former ORS 161.062 (1985) is truly unambiguous in stating that subsection (2) applies exclusively when a single statute is violated, contrary to what the majority seems to assume. For those reasons, the legislative history of that provision cannot bear the weight that the majority gives it.[5]
In short, neither the text of ORS 161.067 in context, nor the legislative history, supports a conclusion that the voters' desire to separately recognize harms done to multiple victims is implicated when the criminal conduct happens to violate a single statute but not otherwise . That conclusion would lead to *53 peculiar results. Consider a person who murders three victims. If the state proves all elements of murder with respect to each victim, then that person's criminal record may reflect three convictions for murder-and, if the state additionally proves that all three killings occurred during the same criminal episode, then the conduct supports conviction of aggravated murder as well (which is defined to include, among other things, the killing of more than one person in one criminal episode, see ORS 163.095 (1)(d) ). Under the majority's view of the merger statute, if the state for some reason chose to charge the person with three counts of murder and one count of aggravated murder, and the state failed to prove the aggravating element (that all three murders occurred during the same criminal episode), then the judgment would reflect three separate convictions; however, if the state successfully proved the aggravating element, then the judgment would reflect just one conviction. (The "anti-merger" rule in ORS 161.067(1) would not apply, because the aggravated murder conviction would subsume **312 the lesser-included offense of murder. The "anti-merger" rule in ORS 161.067(2) would not apply because two different statutes were violated.) I can think of no reason why the voters would have intended for the defendant in that case to stand convicted of fewer crimes because the state establishes that the defendant also committed a greater offense .[6]
I respectfully dissent.

The legislature eventually repealed former ORS 161.062 (1985) in 1999 on the recommendation of the Oregon Law Commission because the statute was obsolete in light of ORS 161.067, Nix , 355 Or. at 786 n. 4, 334 P.3d 437 ; however, the voters' "anti-merger" law, ORS 161.067, remained in effect.

As discussed below, the common source was likely Oregon's former jeopardy statute, ORS 131.505.

The majority responds to that reasoning by pointing out that, to obtain restitution, the state would have to identify the victims. However, there is no guarantee that restitution will be sought or, if sought, ordered. In this case, restitution was not ordered. In fact, the only information in defendant's judgment of conviction that reflects the extent of his identity theft is the reference to 27 separate counts of that offense-the very information that will be erased by the majority's merger analysis.

The majority cites Nix for the proposition that "this court has treated former ORS 161.062 [ (1985) ] and ORS 161.067 as essentially interchangeable." Gensitskiy , 365 Or. at 291, 446 P.3d at 42. We explained in Nix that, "[o]rdinarily, when legislation has been essentially reenacted with no material change , we assume-in the absence of evidence to the contrary-that no change in meaning was intended." 355 Or. at 786, 334 P.3d 437 (emphasis added). We accordingly, in Nix , interpreted the term "victim" in ORS 161.067 (which, importantly, had not changed since former ORS 161.062 (1985) and ORS 161.067 were originally drafted) by examining whether anything in the early legislative history of former ORS 161.062 (1985) suggested a different meaning of "victim" than the ordinary meaning evident from the text and context of ORS 161.067. 355 Or. at 784-87, 334 P.3d 437. In this case, however, whether there was a "material change" through the introduction of the word "though" in the later enacted statute is precisely what is at issue.

The majority's discussion of ORS 131.505, the likely "common source" of ORS 161.067 and former ORS 161.062 (1985), suffers from the same flaw. The majority explains that ORS 131.505(2) "resolves the matter of the number of offenses for double jeopardy purposes" in cases implicating multiple statutory provisions "and there is no need to proceed to ORS 131.505(3)." Gensitskiy , 365 Or. at 293, 446 P.3d at 43. In other words, one may resort to ORS 131.505(3) only if ORS 131.505(2) does not apply, i.e. , in cases where only one statute is violated. But the majority simply assumes without explanation that ORS 131.505 operates sequentially, so that subsection (3) has meaning only if it is first determined that subsection (2) does not apply. That statute does not have to be read that way. Subsections (2) and (3) can just as plausibly be understood to operate independently rather than sequentially, as the legislative history suggests (discussed above). See Commentary § 26 at 16 (allowing for separate offenses "also" where there are multiple victims of a single course of criminal conduct).

Cf. State v. Munoz-Juarez , 271 Or. App. 261, 266, 350 P.3d 516 (2015) (declining to apply ORS 161.067 in "a manner that would create the nonsensical result that a defendant can be convicted of two counts of attempted aggravated murder for attempting to murder two victims in the same criminal episode *** but nonetheless cannot be convicted of one count of attempted aggravated murder and one count of the lesser offense of attempted murder for the exact same conduct").